UNITED STATES of America,
Plaintiff-Appellant,

v.

CITY OF REDWOOD CITY, California
and Albert V. Pinotti, Individually and
dba The People's Police Patrol, Defend-
ants-Appellees.

No. 78-3162.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 9, 1980.

Submitted Oct. 31, 1980.

Decided Feb. 23, 1981.

Norman Ronneberg, Jr., San Francisco, Cal., for plaintiff-appellant.

Joseph C. Howard, Jr., Branson, Fitzgerald & Howard, Redwood City, Cal., David B. Paynter, Ericksen, MacKenroth & Arbuthnot, San Francisco, Cal., for defendants-appellees.

Before CHOY, Circuit Judge, KASHIWA,* Court of Claims Judge, and TANG, Circuit Judge.

KASHIWA, Court of Claims Judge:

The appellant, United States, seeks to recover costs it incurred due to the sinking of the barge Pioneer No. 1. Reimbursement is sought from The City of Redwood City (Redwood City), owner and operator of the Port of Redwood City and the berth at which the barge sank, and from Albert V. Pinotti (Pinotti), owner and operator of the private police company which provided security at the Port.[1] The damages claimed

---

* Honorable Shiro Kashiwa, Associate Judge, United States Court of Claims, sitting by designation.

1. The United States initiated the "third party" action against Pinotti and Redwood City on January 18, 1978. *United States v. City of Redwood City*, No. 78–3162. Previously, on October 3, 1975, the barge owner, Pioneer Shell Co., Inc., filed a petition for exoneration from or limitation of liability. *In re Pioneer No. 1*, No. 78–3161. In the action for exoneration, the United States answered and made a claim for its own wreck removal and oil pollution costs. Redwood City joined as a party to the exoneration proceeding and filed an answer and claim against Pioneer Shell. Thereafter Pioneer Shell cross claimed for damages against Pinotti.

herein are for wreck removal and oil pollution cleanup costs. The averred nonowner's liability is premised on 33 U.S.C. §§ 401–414 (1976) (Wreck Removal Act), the Federal Water Pollution Control Act, 33 U.S.C. § 1321 (Supp. II, 1972) (FWPCA), and general maritime tort and nuisance theories.

The issue on appeal is whether the district court erred in granting defendants' motions to dismiss. We reverse.

## I. *The Facts*

On May 8, 1975, the barge Pioneer No. 1 sank at its berth at the Port of Redwood City, California. The sinking created an obstruction to navigable waters of the United States and also resulted in a discharge of oil. The United States removed both the stricken vessel and the discharged oil from the waterway. Those costs, allegedly, were $81,725 and $7,014.51, respectively.

By contract Pinotti was required to provide security services to the Port, *i. e.*, patrol and maintain surveillance over the Port and its occupants. Redwood City had the normal duties of a wharfinger.

The material allegations of the United States' complaint are as follows:

a) At all material times, defendants City of Redwood City and Albert V. Pinotti, *et al.* were the agents, servants and employees of each other, and were acting within the scope of their respective authorities.

b) The sinking of the barge PIONEER NO. 1 was caused by the fault, negligence and carelessness of defendants, in that: 1) They knew or should have known that the barge which they permitted to be moored on their premises was unseaworthy, unfit, and leaking; and 2) they failed to take adequate measures to prevent the sinking of the barge when they or their agents knew it was in fact sinking at its berth.

c) Defendants received notice that the barge had sunk, and was discharging oil.

d) Defendants, in causing or permitting the vessel to sink, were liable to the United States, under the provisions of the Wreck Removal Act, 33 U.S.C. 409–414, to reimburse the United States for its wreck removal expenses.

e) Defendants, in causing or permitting the vessel to sink and discharge oil, were liable to the United States, under the provisions of the Federal Water Pollution [Control] Act (FWPCA), 33 U.S.C. 1321, to reimburse the United States for its oil cleanup costs.

f) Defendants were unjustly enriched in having their duties performed by the United States.

g) Defendants had created a public nuisance and were liable to the United States for the cost of said nuisance's removal.

Pinotti moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). This motion asserted that, as a non-vessel owner, neither the Wreck Removal Act nor the FWPCA imposed a duty on him to reimburse the United States for any of the expenses at issue.

Redwood City filed a motion to dismiss, denominated a motion for judgment on the pleadings, under Fed.R.Civ.P. 12(c). Redwood City's motion asserted that the United States failed to state a claim against it either for wreck removal or oil cleanup damages because the Wreck Removal Act applies only to owners of vessels. Furthermore, it asserted that the FWPCA applies only to owners and operators of the polluting vessel in the absence of willful negligence or willful misconduct.

Pursuant to these motions the district court dismissed the claim of the United States.

These separate actions were consolidated below.

Pursuant to a stipulation of the parties, approved by Judge Lloyd H. Burke, we determined the judgment of dismissal inadvertently listed both *In re Pioneer No. 1* and *United States v. City of Redwood City.* Therefore, we entered an order clarifying the appealability of Judge Burke's dismissal order and dismissed *In re Pioneer No. 1* for lack of jurisdiction and found *United States v. City of Redwood City* was properly submitted for our decision. Nos. 78–3161, 78–3162 (filed October 31, 1980).

## II. *The Merits*

Central to appellant's complaint is the allegation of negligence on the part of the appellees. It is claimed that appellees' negligence permitted the vessel to sink, thereby causing the expenses for the wreck removal and oil pollution cleanup. We cannot determine from the judgment below what the basis for dismissal was. It appears, however, that the district court may have made a determination of negligence and causation.[2] In orally granting the requested motions to dismiss, the district court stated, *inter alia*: "it seems to me that causal responsibility in this case is so removed from the defendants that it does present a rather unusual situation * * * "; and the court believed that "to regard the activities of the defendants as negligent misconduct is to stretch [proximate] cause * * * to an unreasonable degree." But even if the face of the pleadings indicate that recovery is very remote, the claimant is still entitled to offer evidence to support its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). *See also Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1100 (9th Cir. 1971). Also, in acting on a motion to dismiss, the plaintiff's allegations must be assumed to be true and the complaint must be construed in the light most favorable to the plaintiff. *California Dump Truck Owners Assn. v. Associated General Contractors of America*, 562 F.2d 607, 614 (9th Cir. 1977); *McKinney v. De Bord*, 507 F.2d 501, 503 (9th Cir. 1974).

Moreover, the accepted rule is that a complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980); *DeWitt v. Pail*, 366 F.2d 682, 685 (9th Cir. 1966). Under this rule it is only the extraordinary case in which dismissal is proper. *Corsican Productions v. Pitchess*, 338 F.2d 441, 442 (9th Cir. 1964); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 at 598 (1969).

■ We find that appellant's complaint sets forth allegations which, if proved, would support its claims against appellees for wreck removal and oil cleanup costs. With what the district court had before it, it could not be certain beyond doubt that the United States would be unable to prove its case at trial. *Conley v. Gibson, supra.* Thus, assuming the district court dismissed based on grounds of causation and negligence, it erred; the United States should be given an opportunity to develop and prove the relevant facts at a trial.

Recovery of the costs incurred by the United States in removing the sunken barge is sought under section 15 of the Wreck Removal Act, which is a portion of the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 *et seq.*[3] In light of the hold-

---

**2.** It is also possible the complaint was dismissed because the district court felt the United States could not recover against third parties under the Wreck Removal Act or that no recovery was allowed under the FWPCA. A discussion of the merits of those grounds follows the discussion of the propriety of a dismissal on causation or negligence.

**3.** Sections 15, 16, and 19, of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 409, 411, 412, and 414 are commonly known as the Wreck Removal Act. Section 15 (33 U.S.C. § 409) states:

§ 409. *Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels*

It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft

ings in *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), and *University of Texas Medical Branch at Galveston v. United States*, 557 F.2d 438 (5th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978), both appellees concede that section 15 of the Wreck Removal Act applies to some nonowners of vessels.[4] It is their contention, however, that liability under the Act is limited to active negligence.[5]

In *Wyandotte Transportation Co. v. United States, supra*, two actions were consolidated. Both cases involved the negligent sinking of barges. The United States removed the sunken vessels and in an *in personam* action brought suit against the barge owners, the owners of the vessels moving the barges, and the owners of the cargo. The Court held that, under section 15 of the Wreck Removal Act, the procedures specified were not exclusive and the United States has available to it the ability to seek reimbursement of wreck removal expenses. *Id.* at 200–201, 88 S.Ct. at 385. The Court also observed that the general prohibition against the negligent sinking of a vessel is not limited to owners. *Id.* at 199 n.11, 88 S.Ct. at 385 n.11. In view of the *Wyandotte* decision, it is apparent section 15 is not limited to vessel owners. As the court in *University of Texas Medical Branch at Galveston v. United States, supra* at 445, stated: "[the Supreme Court] drew no distinction between negligent owners of the wreck and negligent nonowners. Indeed, it rejected the claim that negligent owners of the wreck should be treated differently * * *."

■ The question to be decided here is whether a nonowner's liability under section 15 of the Wreck Removal Act is restricted to active negligence. It is axiomatic that in a negligence action causation encompasses both the defendant's acts and omissions. Prosser, *Law of Torts* (4th ed.) at 237–238. We therefore must determine whether the Wreck Removal Act intended a divergence from common law tort actions.

■ The Supreme Court has consistently determined the coverage of the Wreck Removal Act to be broad. *See, e. g., Wyandotte Transportation Co. v. United States, supra; United States v. Republic Steel Corp.*, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960); *Sanitary District of Chicago v. United States*, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925). The Wreck Removal Act is an assertion of the sovereign power resting in the United States; and "a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself." *United States v. Republic Steel Corp., supra* at 492, 80 S.Ct. at 890.

■ The main thrust of the *Wyandotte* opinion was preventing the shifting of responsibility for the consequences of a wreck removal from the negligent party onto the innocent victim. *Id.* at 204, 88 S.Ct. at 387. Since the victim of the sinking and the intended beneficiary of the Wreck Removal Act is the United States, and in light of the broad protection intended, we find that creating a distinction between negligence by action or omission is without logical foundation. We therefore hold that either negligent acts of commission or omission may render such negligent party liable for wreck removal expenses.

■ Redwood City as a wharfinger provides berths, for consideration, to the public. Pinotti owned a private police service

---

to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

4. But Redwood City does make an effort to limit such liability to owners only, relying largely on *In re Chinese Maritime Trust, Ltd.*, 478 F.2d 1357 (2d Cir. 1973), *cert. denied*, 414

U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1974). We find, however, that the Second Circuit never reached the issue of the United States' right to proceed directly against nonowners. As such, *In re Chinese Maritime Trust* is of no assistance to Redwood City.

5. Pinotti would extend liability as well to those who had "some contractual or assumed duty to prevent a sinking," which it avers it lacked.

which was hired to conduct regular patrols of the berths and check for problems in the area. As we discussed *supra*, the United States has a right to present its case at a trial and prove that the appellees in acting as wharfinger and as a protective service somehow breached a duty by failing to prevent the sinking at issue. If the United States can prove the appellees were negligent in failing to prevent the sinking, then a recovery of costs expended in removing the sunken vessel is owed the United States under the Wreck Removal Act.

In its complaint the United States also sought to recover the costs incurred in removing the oil discharged from the sunken barge. Such a recovery was brought under the FWPCA, 33 U.S.C. § 1321(g).[6]

Appellees claim 33 U.S.C. § 1321(g) only allows a direct recovery from a third party if there was "willful negligence or willful misconduct" on the part of such third party. The United States has not alleged that either Redwood City or Pinotti caused the discharge as a result of willful negligence or willful misconduct. Thus, so the argument goes, there can be no recovery on behalf of the United States against either appellee.

Further, Pinotti argues the discharge of oil must be the sole responsibility of the third party and since the United States did not allege such sole responsibility, no recovery may be had against appellees.

■ In analyzing this section we feel it important to bear in mind the broad purpose of the FWPCA: "The Congress hereby declares that it is the policy of the United States that there should be no discharges of oil * * *." 33 U.S.C. § 1321(b)(1). Because this is remedial legislation the statute should be read "charitably in light of the purpose to be served," *United States v. Republic Steel Corp., supra,* 362 U.S. at 491, 80 S.Ct. at 890, and is entitled to a liberal construction to accomplish the purposes of the Act. *See United States v. Standard Oil Co.,* 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966); *United States v. Hamel,* 551 F.2d 107, 112 (6th Cir. 1977).

Under appellees' theory if the United States is to proceed directly against a third party, such third party must be solely responsible for the discharge of oil and such discharge must be the product of either willful negligence or willful misconduct. If such facts are not present, then the United States can only proceed against such a negligent third party if the vessel owner sues him. We are skeptical of a procedure re-

---

**6.** 33 U.S.C. § 1321(g):

(g) *Third party liability.*

In any case where an owner or operator of a vessel, of an onshore facility, or of an offshore facility, from which oil or a hazardous substance is discharged in violation of subsection (b)(2) of this section, proves that such discharge of oil or hazardous substance was caused solely by an act or omission of a third party, or was caused solely by such an act or omission in combination with an act of God, an act of war, or negligence on the part of the United States Government, such third party shall, notwithstanding any other provision of law, be liable to the United States Government for the actual costs incurred under subsection (c) of this section for removal of such oil or substance by the United States Government, except where such third party can prove that such discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of another party without regard to whether such act or omission was or was not negligent, or any combination of the foregoing clauses. If such third party was the owner or operator of a vessel which caused the discharge of oil or a hazardous substance in violation of subsection (b)(2) of this section, the liability of such third party under this subsection shall not exceed $100 per gross ton of such vessel or $14,000,000, whichever is the lesser. In any other case the liability of such third party shall not exceed the limitation which would have been applicable to the owner or operator of the vessel or the onshore or offshore facility from which the discharge actually occurred if such owner or operator were liable. If the United States can show that the discharge of oil or a hazardous substance in violation of subsection (b)(2) of this section was the result of willful negligence or willful misconduct within the privity and knowledge of such third party, such third party shall be liable to the United States Government for the full amount of such removal costs. The United States may bring an action against the third party in any court of competent jurisdiction to recover such removal costs.

quiring suit by the vessel owner as a necessary precondition for an action by the United States against such a wrongdoer.

It has been established as a general rule that the United States may sue to protect its interests. *Cotton v. United States*, 52 U.S. (11 How.) 229, 13 L.Ed. 675 (1851); *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888); *Sanitary District of Chicago v. United States, supra.* The appellees' interpretation leads to an absurd result, namely, a party whose sole negligence caused the discharge of oil might escape liability under the FWPCA for the cleanup costs if the vessel owner declined to sue him and if his conduct was not willful. This construction hardly seems likely to encourage the important purpose embodied in the FWPCA of protection of the navigable waters of the United States by the prevention of oil pollution. This construction also creates an illogical and unwarranted interference with the right of the United States to take legal measures to protect its interests.

Bearing in mind the FWPCA is not a model of clarity,[7] when interpreting it we must consider the statutory scheme as a whole, including the object and policies contained within. *See Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 41 L.Ed.2d 525 (1975). We do not find that 33 U.S.C. § 1321 established a priority procedure which must be followed by the United States in filing suit against a party. In many cases the construction favored by the appellees would require a senseless expenditure of time and resources by requiring the United States to sue the non-culpable owner/operator with such owner/operator, co-operatively, bringing suit against the culpable third party. We refuse to add our imprimatur to such an impediment to the Congressionally declared purpose of prevention of oil spills.

We hold that the United States may sue negligent third parties directly. The statute itself provides that "[t]he United States may bring an action against the third party

in any court of competent jurisdiction to recover such removal costs." 33 U.S.C. § 1321(g). Further, we find the provision dealing with "willful negligence or willful misconduct" is limited to situations where the United States seeks recovery of the full amount of the removal costs and such amount exceeds the limitation provided in 33 U.S.C. § 1321(g). Finally, we find the statutory provision regarding sole acts of negligence by third parties was included as an adjunct to the exceptions to owner/operator liability provided in 33 U.S.C. § 1321(f)(1), (2), and (3). This language makes it clear that in those circumstances described in section 1321(f)(1), (2), and (3) the negligent third party is liable for the cleanup costs. We do not read the Act as limiting third-party liability to the narrow circumstances urged by appellees. *Cf. Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151 (2d Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979) (third-party tugboat owner held liable under the FWPCA without a finding of sole responsibility).

Appellant also argues it possesses the remedies available under maritime tort and nuisance theories. Some courts have held that the FWPCA is the government's exclusive remedy to recover oil spill cleanup costs. *E. g., Steuart Transportation Co. v. Allied Towing Corp.*, 596 F.2d 609 (4th Cir. 1979); *United States v. Dixie Carriers, Inc.*, 462 F.Supp. 1126 (E.D.La.1978), *aff'd*, 627 F.2d 736 (5th Cir. 1980). We feel, however, that the face of the statute itself undermines such a holding. The FWPCA provides:

The liabilities established by this section shall in no way affect any rights which * * * (2) the United States Government may have against any third party whose actions may in any way have caused or contributed to the discharge of oil or hazardous substance. [33 U.S.C. § 1321(h)(2).]

Oil pollution in navigable waters has been deemed a tort for which the United States

**7.** A view in which we are not alone, *see Tug Ocean Prince, Inc. v. United States*, 584 F.2d

1151, 1162 (2d Cir. 1978).

is entitled damages, *see Oppen v. Aetna Insurance Co.*, 485 F.2d 252, 257 (9th Cir. 1973); *State Department of Fish and Game v. SS Bournemouth*, 307 F.Supp. 922, 926 (C.D.Cal.1969). It has also been held to constitute a public nuisance. *Illinois v. Milwaukee*, 406 U.S. 91, 106, 92 S.Ct. 1385, 1394, 31 L.Ed.2d 712 (1972). The damages sought here are not in excess of the limitation provided in the FWPCA.

Therefore, since the United States possessed the right to seek damages under a maritime tort or nuisance theory, given the broad language of 33 U.S.C. § 1321(h)(2), we do not see how such rights could have been usurped by the FWPCA, where there is no inconsistency in remedies. As such, the district court's dismissal is also in error on this ground because a valid claim was alleged by the United States under maritime tort and nuisance theories.

The decision of the district court is reversed and remanded for further proceedings consistent with this decision.