Dr. Gary S. LAZAR, Plaintiff,

v.

TRANS UNION LLC, formerly known as Trans Union Corporation and doing business as Trans Union Credit Information Company, Defendant.

No. CV 00–03361 DT (JWJX).

United States District Court, C.D. California.

July 10, 2000.

David A. Szwak, Shreveport, LA, Gerald Sauer, Los Angeles, CA, for plaintiff.

Don Bradley, for Trans Union, LLC.

TEVRIZIAN, District Judge.

## Background

### A. Factual Summary

This is an action by Plaintiff Dr. Gary S. Lazar ("Plaintiff") against Defendant TRANS UNION LLC, formerly known as TRANS UNION CORPORATION and doing business as TRANS UNION CREDIT INFORMATION COMPANY ("TUC") for violation of 15 U.S.C. § 1681e(b), violation of 15 U.S.C. § 1681i(a), breach of contract as a third party beneficiary, and violation of California Business and Professions Code §§ 17200, *et seq.*

The following facts are alleged in the First Amended Complaint ("FAC"):

On or about April 17, 1990, Plaintiff sought a credit line increase on his First Card VISA credit card, account number 4673–633–701–966, from First Card, a credit card bank. *See* FAC, ¶ 11. At this time, he learned that the credit report prepared and issued by TUC to First Card contained inaccurate information. *See id.* Plaintiff was unable to

obtain the credit increase that he requested. *See id.*

On or about July 23, 1990, Plaintiff called and wrote to TUC and requested a copy of his credit report. *See id.* at ¶ 12.

On or about July 28, 1990, TUC prepared and issued a consumer report to Plaintiff which contained inaccurate information. *See id.* at ¶ 13.

On or about August 2, 1990, when he received TUC's consumer report, Plaintiff notified TUC in writing that no tax liens existed against him. *See id.* at ¶ 14. He also disputed the inaccurate personal identification data on the report. *See id.*

On or about August 20, 1990, TUC prepared and issued a post-reinvestigation consumer report to Plaintiff. *See id.* at ¶ 15. This consumer report contained a notification that states "DO NOT CONFUSE WITH GARY LAZAR SS# 549–72–6377" and lists various inquiries indicating the disclosure of earlier inaccurate consumer reports to third persons. *See id.*

On or about October 17, 1992, Plaintiff applied for a credit card from Citibank VISA, a credit card bank. *See id.* at ¶ 16. He learned that a credit report, containing inaccurate information that he had disputed previously, had been prepared and issued by TUC. *See id.* He was unable to obtain the credit card. *See id.*

On or about November 16, 1992, Plaintiff wrote to TUC and requested a copy of his credit report. *See id.* at ¶ 17. In response, he received a credit report that contained multiple inaccuracies. *See id.*

On or about December 14, 1992, TUC prepared and issued a post-reinvestigation consumer report to Plaintiff. *See id.* at ¶ 18.

In or about November 1994, Plaintiff received a pre-approved credit solicitation from First VISA Classic, via First Deposit National Bank. *See id.* at ¶ 19. This solicitation was addressed to a "Grace Lazar" at his residential address in Encino, California. *See id.* Since his wife's name is "Carole," Plaintiff decided to investigate the source of the inaccurate information that was utilized by First Deposit National Bank. *See id.*

On or about November 14, 1994, Plaintiff called First Deposit National Bank and spoke with "George Toy" who advised him that the bank had received the name "Grace Lazar" in connection with his address via a TUC "prescreen" report and listing. *See id.* at ¶ 20. Plaintiff then contacted TUC and spoke with an employee, "Mrs. Neathery." *See id.* at ¶ 21. During this conversation, he discussed his prior problems with TUC and described the recent credit solicitation that combined the name "Grace Lazar" with his own residential address. *See id.* He asked TUC to take the appropriate steps to remove the inaccurate information from his records in its data base. *See id.*

On or about November 16, 1994, TUC wrote to Plaintiff and acknowledged receipt of another letter of dispute. *See id.* at ¶ 22.

On or about December 9, 1994, TUC prepared and issued a post-reinvestigation consumer report to Plaintiff. *See id.* at ¶ 23.

In or about April 1999, Plaintiff sought to refinance a mortgage through Troxler & Associates, a mortgage broker. *See id.* at ¶ 24. He learned that his credit report, issued by Lender's Credit and based on data prepared and disclosed by the three national credit reporting agencies ("CRA's"), TUC, Experian, and Equifax, contained inaccurate information. *See id.* As a result of these inaccuracies in this credit report attributable to data supplied by TUC, Plaintiff's efforts to refinance the mortgage were delayed for approximately three months, and ultimately he was required to pay a higher rate of interest. *See id.*

On May 10, 1999, Plaintiff called TUC and spoke to "Jaya" in the fraud division. *See id.* at ¶ 25. During this conversation, he discussed his prior problems with TUC and described the numerous inaccuracies appearing in his credit report that were attributable to TUC. *See id.* TUC supplied this inaccurate data to Lender's Credit, including, but not limited to, approximately 38 tax liens. *See id.* "Jaya" suggested that the problem was attributable to Troxler & Associate's inability to access Plaintiff's information correctly. *See id.* He again asked TUC to correct his report. *See id.*

On or about May 20, 1999, Plaintiff wrote to TUC about the recurring nature of the inaccurate information attributable to TUC. *See id.* at ¶ 26. He asked TUC to remove the information regarding "Gary Lazar," the felon, from his future TUC credit reports. *See id.*

On or about May 28, 1999, TUC wrote to Plaintiff and suggested that the problem regarding the credit data had been corrected by removing his current address from the credit file for "Gary Lazar," the felon. *See id.* at ¶ 27. TUC then prepared and issued a consumer credit report to Plaintiff that suggested that no inaccurate information had ever been reported. *See id.* at ¶ 28.

On or about June 23, 1999, Plaintiff received a collection letter form JJ Cimino Collections with regard to an unpaid utilities account belonging to "Gary Lazar," the felon. *See id.* at ¶ 29. Plaintiff believes that the information that led JJ Cimino Collections to issue the collection letter was based on data supplied by TUC to Lender's Credit. *See id.*

On or about July 31, 1999, Plaintiff received a letter from the Internal Revenue Service ("IRS") to verify whether "Gary Lazar," the felon, lives at his residence. *See id.* at ¶ 30.

On or about August 23, 1999, Plaintiff sought to lease a car from Auto Steigler, a car dealer and lessor. *See id.* at ¶ 31. He learned that his credit report, issued by Credco and based on data prepared and disclosed by the three national CRA's, TUC, Experian, and Equifax, contained inaccurate information. *See id.* In reviewing this report, he discovered that it contained approximately 50 separate incorrect entries based on data supplied by TUC. *See id.* In order to complete the lease transaction, Plaintiff had to travel to his home to retrieve a copy of his "cleansed" TUC report, dated May 28, 1999. *See id.* at ¶ 32. As a result of his prior dealings with Auto Steigler and the "cleansed" TUC credit report, he was able to lease the car. *See id.*

On or about August 24, 1999, Plaintiff telephoned Chris Trump ("Trump"), an employee at Credco, and explained the problem regarding the erroneous information supplied by TUC that had been incorporated into Credco's credit report. *See id.* at ¶ 33. Trump informed him that she would attempt to correct the problem. *See id.*

On or about August 24, 1999, Plaintiff received a copy of a letter, including its enclosures, that Credco had sent to TUC in an attempt to remove the inaccurate information from his file. *See id.* at ¶ 34.

On or about September 2, 1999, TUC prepared and issued a consumer credit report to Plaintiff that suggested that no inaccurate information had ever been reported. *See id.* at ¶ 35.

On or about September 24, 1999, Plaintiff received a supplemental report from Credco that indicated that the inaccurate information provided by TUC had been deleted from his credit file. *See id.* at ¶ 36.

On or about November 19, 1999, Plaintiff obtained a copy of his credit report issued by TUC. *See id.* at ¶ 37. In reviewing this report, he discovered that TUC identified the credit file of "Gary Lazar," the felon, as a "possible additional consumer file" linked to Plaintiff's credit file. *See id.*

### B. Procedural Summary

On March 31, 2000, Plaintiff filed the Complaint for Damages and Injunctive Relief.

On April 14, 2000, Plaintiff filed the First Amended Complaint for Damages and Injunctive Relief.

On May 19, 2000, TUC filed a Motion to Strike Paragraphs 10 through 23, Inclusive, and Paragraph 60 (Partial) of the First Amended Complaint and Paragraph 6 of the First Amended Complaint's Prayer for Relief, which is currently before this Court.

On May 19, 2000, TUC filed a Motion to Dismiss: (1) First and Second Causes of Action to the Extent Predicated upon Events which Occurred Outside the Applicable Limitations Period; (2) Third Cause of Action for Breach of Contract/Third Party Beneficiary in its Entirety; and (3) Fourth Cause of Action to Extent Restitutionary Relief is Sought on Behalf of the General Public, which is also currently before this Court.

## II. *Discussion*

### A. *Standard*

#### 1. *Motion to Strike*

Under FRCP 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter from the pleadings." This includes striking "any part of the prayer for relief when damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1459 n. 34 (C.D.Cal.1996).

 Motions to strike are generally viewed with disfavor and are not frequently granted. *Pease & Curren Ref., Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 947 (C.D.Cal. 1990). Further, courts must view the pleadings under attack in the light more favorable to the pleader. *California v. United States,* 512 F.Supp. 36, 39 (N.D.Cal.1981). Motions to strike "are generally not granted unless it is clear that matter to be stricken could have no possible bearing on the subject matter of litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F.Supp. 820, 830 (N.D.Cal.1992). Indeed, "a case should be tried on the proofs rather than the pleadings." *Rennie & Laughlin, Inc. v. Chrysler Corp.,* 242 F.2d 208, 213 (9th Cir.1957).

#### 2. *Motion to Dismiss*

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the Court must assume that plaintiffs' allegations are true, and must construe plaintiffs' complaint in the light most favorable to plaintiffs. *United States v. City of Redwood City,* 640 F.2d 963, 967 (9th Cir.1981). Moreover, even if the face of the pleadings indicates that recovery is unlikely, the plaintiff is still entitled to offer evidence in support of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Redwood City,* 640 F.2d at 967. Finally, a court may not dismiss complaints pursuant to Fed. R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980).

Generally, orders granting motions to dismiss are without prejudice unless "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." *Schreiber Dist. v. Serv–Well Furniture,* 806 F.2d 1393, 1401 (9th Cir.1986).

### B. *Analysis*

#### 1. *Defendant's Motion to Strike Paragraphs 10 through 23 Must Be Denied.*

##### a. *Plaintiff's First and Second Causes of Action Are Barred by the Statute of Limitations To The Extent They Are Based Upon The Facts Alleged in Paragraphs 10 through 23.*

TUC moves to strike Paragraphs 10 through 23 of the FAC because the facts alleged therein occurred between 1990 and 1994. Since Plaintiff did not bring his action until March 31, 2000, TUC contends that an action based upon the events described in these paragraphs is barred by the two-year statute of limitations imposed by the Fair Credit Reporting Act ("FCRA"). TUC claims that the latest possible date on which Plaintiff could have filed his complaint for these incidents was November 14, 1996.

In opposition to TUC's motion, Plaintiff invokes the "discovery rule" created by the exception to the statute of limitations. He contends that because he did not become aware of TUC's wrongdoing until April of 1999, the statute of limitations did not begin to run until that time.

The paragraphs at issue—Paragraphs 10 through 23—are contained in Plaintiff's General Allegations in support of his first and second causes of action for damages and injunctive relief under 15 U.S.C. § 1681, *et seq.*[1] 15 U.S.C. § 1681p contains the statute

---

[1] Specifically, Plaintiff brings his first cause of action under 15 U.S.C. § 1681e(b), which provides that "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," and Plaintiff brings his second cause of action

of limitations for claims arising under the FCRA. It states:

An action ... may be brought within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required ... to be disclosed to an individual and the information is material to the establishment of the defendant's liability to the individual ... the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

15 U.S.C. § 1681p. The exception to this section constitutes a discovery rule that allows a consumer to bring an action within two years of discovering that disclosed information has been misrepresented. 15 U.S.C. § 1681g identifies the specific information that a CRA is required to disclose. This section mandates that a CRA provide a consumer with the credit information contained in his or her file and the sources of that information, but only upon the request of that consumer. See 15 U.S.C. § 1681g(a)(1)–(2).

For a consumer to use the discovery rule to extend the statute of limitations, most courts agree that the FCRA requires the information in question to be disclosed to the consumer. For example, in *Rylewicz v. Beaton Services, Ltd.*, the Seventh Circuit Court of Appeals refused to apply the discovery rule because the inaccurate information that the plaintiff discovered in his own credit report was not required to be disclosed to him. *See Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175, 1181 (7th Cir.1989). Similarly, the Central District of California drew the same distinction in *Andrews v. Trans Union Corp.*, when it determined that the plaintiff could not invoke the discovery rule exception for information that the FCRA did not require the defendant to disclose. *See Andrews v. Trans Union Corp.*, 7 F.Supp.2d 1056, 1066 (C.D.Cal.1998).

■ This Court finds that recovery based on the facts alleged in Paragraphs 10 through 23 of the FAC is precluded by the

statute of limitations because Plaintiff has not adequately alleged the application of the discovery rule. Specifically, Plaintiff does not allege that certain information required to be disclosed to him was wilfully misrepresented. Rather, he appears to claim that TUC failed to comply with the reinvestigation requirements of 15 U.S.C. § 1681i. 15 U.S.C. § 1681i describes the procedure that a CRA should follow should a consumer dispute the accuracy of the information in his file. *See* 15 U.S.C. § 1681i. In his opposition to this motion, Plaintiff argues that "TUC materially and willfully misrepresented information to [Plaintiff] regarding TUC's deletion of inaccurate information attributable to Gary Lazar, the felon, from Dr. Lazar's credit file." However, Plaintiff admits that TUC responded to each of his complaints by providing him with a copy of his amended report. *See* FAC at ¶ 15, 18, and 23 and Exhs. C, E, and H. According to the FAC, between 1990 and 1994, three separate incidents occurred during which Plaintiff discovered inaccurate information pertaining to another individual of the same name on a credit report generated by TUC. *See id.* at ¶ 11, 16, and 19 and Exhs. A, D and F. After each of these discoveries, Plaintiff notified TUC that he was not related to Gary Lazar, the felon, and requested that TUC rectify its mistake. *See id.* at ¶ 14, 18, and 20. In response, TUC provided him with notice of the results of the reinvestigation and assured him in writing that the inaccurate information had been deleted from his file. *See id.* at ¶ 15, 18, and 23 and Exhs. C, E, and H. After each incident, TUC issued Plaintiff a copy of his corrected credit file, including Plaintiff's true credit history and a warning not to confuse him with Gary Lazar, the felon. *See id.* at ¶ 15, 18, and 23 and Exhibits C, E, and H. After the 1994 incident, TUC also enclosed a notice informing Plaintiff that "any items which you may have disputed which have been deleted will *not* appear on ... future reports." *See id.* at ¶ 23 and Exh. H. Hence, according to the

under 15 U.S.C. § 1681i(a), which describes the procedure that a CRA must follow during a rein-

vestigation of disputed information.

FAC, TUC actually followed the procedure outlined in 15 U.S.C. § 1681i.

■ According to the FAC, in 1999, an incident similar to those in the early 1990's alerted Plaintiff that TUC had not completely deleted the inaccurate information from his file. *See id.* at ¶ 31 and Exh. O. He argues that it was at this time that he learned that TUC's earlier assurances were not truthful. Thus, he now attempts to toll the statute of limitations. However, this attempt is not an application of the discovery rule as set out in 15 U.S.C. § 1681p, but a request for equitable tolling. Courts have determined that the doctrine of equitable tolling may not be used to extend the statute *of limitations under circumstances not covered by the exception. See Rylewicz,* 888 F.2d at 1181. This determination is derived from the general principle that when a particular exception to a statute is explicitly stated in the statute itself, additional exceptions may not be implied. *Andrus v. Glover Construction Co.,* 446 U.S. 608, 616–617, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980). Since the courts have uniformly refused to apply this doctrine to the FCRA statute of limitations, this Court finds that Plaintiff's first and second causes of action are barred by the statute of limitations to the extent that they are based upon the facts alleged in Paragraphs 10 through 23.

This Court notes, however, that the striking of these paragraphs is not warranted for the reasons set forth below. Rather, as explained in the accompanying analysis of the motion to dismiss, dismissal of Plaintiff's first and second causes of action to the extent that they are based upon the events contained in Paragraphs 10 through 23 is proper.

> **b. Although Recovery Based On the Facts Alleged in Paragraphs 10 through 23 Is Barred by the Statute of Limitations. These Paragraphs Are Relevant to the Remaining Portion of Plaintiff's Claims.**

TUC contends that even if the facts in Paragraphs 10 through 23 are not barred by the statute of limitations, they should be struck from the FAC because their presence therein is unduly prejudicial to the defense.

To support this contention, TUC claims that the pretrial discovery related to these facts would be unnecessarily difficult for the company.

Plaintiff argues that even should this Court find that the facts in these paragraphs are time-barred, they should not be stricken from the FAC because they are relevant to his cause of action.

In support of his relevance argument, Plaintiff cites *Bryant v. TRW, Inc.,* 487 F.Supp. 1234 (E.D.Mich.1980), *aff'd by* 689 F.2d 72 (6th Cir.1982). In *Bryant v. TRW, Inc.,* the Eastern District Court of Michigan considered whether evidence of events that occurred outside of the two year statute of limitations period for a FCRA claim should be excluded from a case involving a claim brought under § 1681e(b). *See Bryant,* 487 F.Supp. at 1236. In denying the defendant's motion for judgement notwithstanding the verdict, the court decided that such evidence should not be excluded because it aided the jury in its understanding of "procedures used by the defendant" which "extend[ed] over a period of time." *See id.* at 1236. The court reasoned that such evidence could be "relevant to a determination of whether defendant either negligently or willfully failed to follow reasonable procedures to ·assure maximum possible accuracy of information" required by 15 U.S.C. §§ 1681n and *o. Id.* at 1236. To assess the reasonableness of the procedures used by the defendant CRA, the court held that the jury must have the opportunity to view that conduct in the context of the past relationship between the defendant and the plaintiff. *See id.* Because of the individualized nature of a § 1681e(b) claim, this history is crucial to the jury's understanding of the evidence. *See id.*

■ Plaintiff's causes of action are similar to that in *Bryant* because he alleges that TUC did not "follow reasonable procedures" to cleanse his credit report. In support of this claim, he alleges a repeating pattern of mismanagement of his file by TUC during the 1990–1994 period. This pattern establishes the basis of his contention that TUC violated the FCRA when it generated a faulty credit report for him in April of 1999.

Therefore, the events described in Paragraphs 10 through 23 are still relevant to Plaintiff's contentions because they may be used to the demonstrate "negligence" or "willfulness" by TUC in Plaintiff's FCRA claims. Like the plaintiff in *Bryant,* Plaintiff seeks both actual damages under § 1681*o* for TUC's alleged negligence and punitive damages under § 1681n for TUC's alleged wilful misconduct.

In its reply, TUC invokes the Ninth Circuit Court of Appeals' decision in *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524 (9th Cir.1993) *rev'd on other grounds in Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). *Fantasy* is a copyright case in which the court decided that allegations of events occurring outside of the statute of limitations should have been stricken because they were "superfluous historical allegations." *Id.* at 1527. The court noted that, of these allegations, "only a few lines were devoted to [the particular cause of action]." *Id.* In contrast, the facts alleged in Paragraphs 10 through 23 of the FAC are not "superfluous" background material but an integral part of Plaintiff's claims of continuous inappropriate conduct.

In sum, under FRCP 12(f), any "redundant, immaterial, impertinent, or scandalous matter" should be stricken from the pleadings. In this case, viewing the pleadings in the light most favorable to Plaintiff, this Court cannot say that the matter to be stricken "could have no possible bearing on the subject matter of the litigation." Although Plaintiff cannot recover for the alleged violations contained in Paragraphs 10 through 23 of the FAC, this Court finds that, because of their relevance to Plaintiff's timely claims, TUC's motion to strike these paragraphs must be denied.

**2. Defendant's Motion to Strike Paragraph 60's Reference to the General Public's Entitlement to Restitutionary Relief and Paragraph 6 of the First Amended Complaint's Prayer for Relief Must Be Granted.**

TUC moves to strike Paragraph 60's reference to the general public's entitlement to restitutionary relief and Paragraph 6 of the prayer for relief. Paragraph 60 falls within Plaintiff's fourth cause of action under California Business and Professions Code § 17200 *et seq.,* and Paragraph 6 seeks damages for this claim. Paragraphs 60 claims that "Plaintiff and the general public are entitled to restitution from TUC of all profits and other benefits resulting from said acts and conduct." *See* FAC at ¶ 60. Paragraph 6 prays "For disgorgement of any contribution to TUC's profits derived from its failure to comply with California Business and Professions Code § 17200 *et seq.*" *See* FAC Prayer for Relief at ¶ 6. TUC contends that Plaintiff incorrectly attempts to name an uncertified class as a party to this action under § 17204. TUC claims that individual issues so predominate that Plaintiff is precluded from joining a class of unidentified individuals.

Plaintiff responds to TUC's arguments by emphasizing that, under a provision of the California's Unfair Business Practices Act ("CUPA") that TUC labels "controversial," he is permitted to bring such a class action. This Court disagrees with Plaintiff.

In the FAC, Plaintiff attempts to use California Business and Professions Code §§ 17200, *et seq.,* also known as CUPA, to bring an uncertified class action on behalf of the general public. In Paragraph 60, he specifically asks for relief for the "general public." *FAC,* ¶ 60. Nowhere in the FAC does he indicate that he intends to seek class certification under FRCP 23 in the future.

In *Fletcher v. Security Pacific National Bank,* the California Supreme Court developed the standard by which trial courts should judge the validity of uncertified class actions. *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 454, 153 Cal.Rptr. 28, 591 P.2d 51 (1979). While examining an action brought on behalf of a class of borrowers from the defendant bank, the Court declared that "the trial court must carefully weigh both the advantages and disadvantages of an individual action against the burdens and benefits of a class proceeding for the underlying suit." *Id.*

The cases that have interpreted the *Fletcher* standard create a spectrum of factual sce-

narios for which plaintiffs have attempted to bring uncertified class actions. At one end of the spectrum are those cases in which the circumstances of the individuals in the proposed class are very similar, of which *Kraus v. Trinity Management Services* and *Cortez v. Purolator Air Filtration Products Co.* are two examples. *See Kraus v. Trinity Management Services,* 57 Cal.App.4th 709, 67 Cal. Rptr.2d 210 (1997), *rev'd on other grounds by* 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 999 P.2d 718 (2000); *Cortez v. Purolator Air Filtration Products Co.,* 64 Cal.App.4th 882, 75 Cal.Rptr.2d 551 (1998), *aff'd by* 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000). In *Kraus,* the defendant property owner collected a non-refundable tenant initiation expense reimbursement (TIER) fee, in the amount of $100, from each member of the uncertified class of tenants. *See Kraus,* 57 Cal.App.4th 709. Each member of the plaintiff class then sought to recover this $100, contending that the collection of TIER fees was an unfair business practice that violated the CUPA. *See id.* In *Cortez,* the defendant employer had altered the work schedule for each member of the uncertified class from five eight-hour days per week to four ten-hour days per week without paying them overtime wages. *See Cortez,* 64 Cal.App.4th 882. Each member of the plaintiff class then sought to recover back overtime wages for the extra two hours per day, contending that, by withholding these wages, the defendant employer failed to comply with certain governmental regulations and violated the CUPA. *See id.* In both cases, all members of the classes at issue had experienced the same treatment at the hands of the defendants as all other members of the classes. All damages, if not identical, were readily identifiable and easily calculable. As a result of the striking factual similarities between members of the class, the California Court of Appeals validated the uncertified class ac-

tions. *See Kraus,* 57 Cal.App.4th, *see Cortez,* 64 Cal.App.4th.[2]

At the other end of the spectrum are cases in which the circumstances of the individuals in the proposed class are far less similar, of which *Wilner v. Sunset Life Insurance Co.,* a case introduced by TUC in its motion, is an example. *See Wilner v. Sunset Life Insurance Co.,* 78 Cal.App.4th 952, 93 Cal.Rptr.2d 413 (2000). In *Wilner,* the defendant insurance company allegedly misrepresented the advantages and disadvantages of new life insurance policies to convince policy-holders to convert the old policies to the new. *See id.* at 959–962. The plaintiff class sought to recover the money they lost during the conversion. *See id.* Although the conversion of each policy holder was a part of a larger scheme, the tactics used by the defendant's agents varied widely, as did the damages incurred by each. *See id.* at 968. As a result of these factual differences, the California Court of Appeal determined that the class action was invalid. *See id.*

■ This Court finds that the uncertified class action alleged by Plaintiff in Paragraph 60 of the FAC is invalid because it falls near *Wilner* on the spectrum of cases that follow *Fletcher.* As TUC argues in both its motion and its reply, the causes of action for which Plaintiff seeks damages are "very fact-sensitive issue[s] that will differ greatly from consumer to consumer." Here, unlike the class members in *Kraus* and *Cortez,* Plaintiff did not necessarily experience the same treatment as other consumers at the hands of TUC. To the contrary, as the long list of facts alleged in the FAC attest, Plaintiff's circumstances were quite unusual, even more so than those of the plaintiff in *Wilner.* The probability that TUC "mis-merged" any other consumer's file with that of a felon of the same name with thousands of dollars worth

---

2. This Court notes that both parties address the California Supreme Court's recent rulings in *Kraus* and *Cortez.* *See Kraus v. Trinity Management Services, Inc.,* 23 Cal.4th 116, 96 Cal. Rptr.2d 485, 999 P.2d 718 (2000); *see Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000). As both parties acknowledge, the California Supreme Court did not determine the constitutionality of the CUPA. Rather, it upheld the stan-

dard enunciated in *Fletcher:* "[B]ecause a [CUPA] action is one in equity, in any case in which a defendant can demonstrate a potential for harm or show that the action is not one brought by a competent plaintiff for the benefit of the injured parties, the court may decline to entertain the action as a representative suit." *Kraus,* 96 Cal.Rptr.2d at 501 (citing *Fletcher,* 23 Cal.3d at 454).

of tax liens is negligible. Likewise, as TUC notes in its reply, the probability that any other consumer incurred damages similar to Plaintiff's, like the identical $100 payments in *Kraus,* is also very low. This Court agrees with TUC that it is equally possible that another consumer might have gained as much as Plaintiff allegedly lost from a "mis-merged" credit report. In other words, the range of possible damages for the consumers in this case is even wider that of the policy-holders in *Wilner.*

In sum, this Court finds that Plaintiff's circumstances are not sufficiently similar to his fellow consumers to allow him to bring an uncertified class action on their behalf. As TUC suggests, those uncertified class actions that have been validated by the California Court of Appeals would probably have been certified as class actions under FRCP 23. The plaintiff who brings an uncertified class action should be a reasonable representative of that class. Because this Court finds that Plaintiff is not such a representative, this Court utilizes the discretion granted by *Fletcher* to hold that the uncertified class action is invalid. Thus, Paragraph 60 of the FAC in which Plaintiff references this class and Paragraph 6 of the Prayer for Relief which requests damages for this class must be stricken.

### 3. Dismissal of the First and Second Causes of Action Is Warranted to the Extent These Causes of Action Are Predicated on Events Which Occurred Outside the Applicable Limitations Period

TUC seeks to dismiss the first and second causes of action for alleged violations of the FCRA to the extent those causes of action arise from alleged events which occurred outside of the applicable statute of limitations for failure to state a claim upon which relief can be granted. In support of this, TUC refers to and incorporates the arguments contained in its Motion to Strike.

As explained above, Plaintiff's claims based on the events as set forth in Paragraphs 10 to 23 are barred by the applicable statute of limitations. This Court agrees with TUC that any potential recovery on Plaintiff's first and second causes of action based on these events is barred by the statute of limitations. Thus, dismissal of the second and third causes of action is warranted to the extent that these causes of action are predicated on alleged violations occurring outside the applicable statute of limitations. However, this Court notes that this finding is not inconsistent with the previous determination that the striking of these allegations from the First Amended Complaint is not warranted.

### 4. Dismissal of the third cause of action is warranted

TUC seeks to dismiss the third cause of action for breach of contract/third party beneficiary in its entirety for failure to state a claim upon which relief can be granted. It argues that Plaintiff was not an intended beneficiary of TUC's contracts with its subscribers.

■■■ Civil Code section 1559 states: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." A third party beneficiary must show that the contract was made expressly for his or her benefit. *Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 587, 218 Cal.Rptr. 388. " 'Expressly' means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." *Id.* (Citation and internal quotations omitted.) The test for deciding whether a promise to pay inures to the benefit of a third party is whether an intent so to benefit the third party appears from the terms of the contract. *Mottashed v. Central and Pacific Improvement Corp.* (1935) 8 Cal. App.2d 256, 260, 47 P.2d 525. "It has been frequently held that where a contract incidentally benefits a third person but is not expressly made for his benefit, he cannot recover thereon." *Id.*

■■■ This Court finds that dismissal of this cause of action is warranted. In other words, Plaintiff has not, and cannot, plead that he is a third party beneficiary of the contracts between TUC and its subscribers for credit reports. The contracts between TUC and its subscribers are not made expressly for the benefit of Plaintiff; rather,

Plaintiff is only incidentally benefitted by performance of the contract. As argued by TUC, credit reporting agencies, such as TUC, enter into contracts with many subscribers, predominantly companies that extend credit to consumers. A separate contract is not entered into with a subscriber each time a particular consumer's credit profile is accessed. Rather, the subscriber enters into one standing contract whereby the subscriber certifies that it will only access consumer credit profiles for permissible purposes under the FCRA. While the public benefits from these subscriber agreements, no specific member of the public is an intended beneficiary of these agreements. Indeed, even Plaintiff admits that TUC's subscriber contracts "contain an implied obligation." As such, Plaintiff is not entitled to enforce the contracts between TUC and its subscribers. Accordingly, this Court finds that dismissal of the third cause of action for third party beneficiary/breach of contract is warranted.

**5. Dismissal of the fourth cause of action is warranted to the extent restitutionary relief is sought on behalf of the general public**

TUC seeks to dismiss the fourth cause of action for alleged violation of Sections 17200, et seq., of the California Business and Professions Code to the extent it seeks restitutionary relief on behalf of the general public for failure to state a claim. In support of this, TUC refers to and incorporates its arguments in its Motion to Strike. Thus, for the same reasons discussed above, this Court finds that dismissal of Plaintiff's fourth cause of action under the Unfair Practices Act to the extent it seeks restitutionary relief on behalf of the general public is warranted.

**C. Conclusion**

Based on the foregoing discussion, this Court hereby **DENIES** Defendant's Motion to Strike Paragraphs 10 Through 23, Inclusive, of the First Amended Complaint and **GRANTS WITH PREJUDICE** Defendant's Motion to Strike Paragraph 60 (Partial) of First Amended Complaint and Paragraph 6 of the First Amended Complaint's Prayer for Relief; and **GRANTS WITH PREJUDICE**

**AND WITHOUT LEAVE TO AMEND** Defendant Trans Union's Motion to Dismiss First and Second Causes of Action to Extent Predicated on Events Which Occurred Outside the Applicable Limitations Period, Third Cause of Action for Breach of Contract/Third Party Beneficiary in its Entirety, and Fourth Cause of Action to Extent Restitutionary Relief is Sought on Behalf of General Public.

**IT IS SO ORDERED.**