[No. B133804. Second Dist., Div. One. Feb. 29, 2000.]

MINA WILNER, Plaintiff and Appellant, v.
SUNSET LIFE INSURANCE COMPANY, Defendant and Respondent.

[No. B137561. Second Dist., Div. One. Feb. 29, 2000.]

SUNSET LIFE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MINA WILNER, Real Party in Interest.

954

**COUNSEL**

Pillsbury, Madison & Sutro, Kenneth R. Chiate, Kevin M. Fong, Dimitrios P. Biller, Gordon K. Wright, Wilfredo Hernandez, Jr.; Wilner Klein & Siegel, Samuel Wilner and Edward E. Wallace for Plaintiff and Appellant and for Real Party in Interest.

Barger & Wolen, Kent R. Keller, Martin E. Rosen, Larry M. Golub; Galton & Helm, David A. Lingenbrink and Edith S. Shea for Defendant and Respondent and for Petitioner.

No appearance for Respondent.

## OPINION

## SPENCER, J.—

### INTRODUCTION

In these related proceedings, plaintiff Mina Wilner (Wilner) appeals from an order sustaining without leave to amend a demurrer to the class action allegations of her first amended complaint.[1] Defendant Sunset Life Insurance Company (Sunset) petitions for a writ commanding the superior court to sustain a demurrer to the sixth cause of action of Wilner's second amended complaint, which alleges a violation of the unfair competition law (Bus. & Prof. Code, §§ 17200-17209). We reverse the order sustaining the demurrer to the class action allegations and deny the writ petition.

### BACKGROUND[2]

Wilner originally sued Sunset and one of its agents for various forms of deceit, breach of fiduciary duty and negligence in connection with the sale to her of a universal life insurance policy as a replacement for an existing policy. She thereafter filed a first amended complaint that, in addition to the causes of action originally stated, added class action allegations and a cause of action seeking declaratory and injunctive relief. Sunset demurred. Following a hearing, the trial court sustained without leave to amend the demurrer to the class action allegations and to the fifth cause of action for breach of fiduciary duty. In all other respects, the court overruled the demurrer. Wilner thereafter filed a second amended complaint, in which she restated her various deceit and negligence claims and added a cause of action for violation of the unfair competition law (Bus. & Prof. Code, §§ 17200-17209). Sunset again demurred. The court overruled the demurrer.

### CONTENTIONS

*Appeal*

I

Wilner contends the trial court abused its discretion in sustaining without leave to amend the demurrer to the class action allegations of her first amended complaint.

---

[1]The order is appealable to the extent that it prevents further proceedings as a class action. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732].)

[2]Pertinent facts will appear in the body of the opinion as they are necessary to the resolution of the issues raised.

*Writ Proceeding*

## II

Sunset asserts the trial court abused its discretion in overruling its demurrer to the sixth cause of action, for violation of California's unfair competition law (Bus. & Prof. Code, §§ 17200-17209), of Wilner's second amended complaint.

### DISCUSSION

*Appeal*

## I

 Wilner contends the trial court abused its discretion in sustaining without leave to amend the demurrer to the class action allegations of her first amended complaint. We agree.

 A demurrer tests the sufficiency of a complaint by raising questions of law. (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 20 [223 Cal.Rptr. 806].) In determining the merits of a demurrer, all material facts pleaded in the complaint and those that arise by reasonable implication, but not conclusions of fact or law, are deemed admitted by the demurring party. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752].) The complaint must be construed liberally by drawing reasonable inferences from the facts pleaded. (*Flynn v. Higham* (1983) 149 Cal.App.3d 677, 679 [197 Cal.Rptr. 145].)

On appeal, we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. (*Lee v. Bank of America* (1990) 218 Cal.App.3d 914, 919 [267 Cal.Rptr. 387]; *Mayflower Ins. Co. v. Pellegrino* (1989) 212 Cal.App.3d 1326, 1332 [261 Cal.Rptr. 224].) This court is not bound by the trial court's construction of the complaint, but must make its own independent interpretation. (*Rader Co. v. Stone, supra*, 178 Cal.App.3d at p. 20.)

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility any defect can be cured by amendment. (*Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726]; *Interinsurance Exchange v. Narula, supra*, 33 Cal.App.4th at p. 1143.) A demurrer may be sustained without leave to amend where the

nature of the defects and previous unsuccessful attempts to plead render it probable plaintiff cannot state a cause of action. (*Taliaferro v. Wampler* (1954) 127 Cal.App.2d 306, 310 [273 P.2d 829].) To avoid this result, plaintiff must demonstrate how she can amend her complaint to change the legal effect of her pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *Wade v. 20th Century Ins. Co.* (1988) 206 Cal.App.3d 32, 39 [253 Cal.Rptr. 361].)

As noted in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964], "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society. . . . [¶] Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial." (At p. 808.)

■ There are two essential elements for maintenance of a class action: an "ascertainable class" and "a well-defined community of interest in the questions of law and fact involved." (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 809.) In order for there to be an ascertainable class, "the right of each individual to recover may not be based on a separate set of facts applicable only to him." (*Ibid.,* fn. omitted.) Community of interest "does not depend upon an identical recovery, and the fact that each member of the class must prove his separate claim to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper. The mere fact that separate transactions are involved does not of itself preclude a finding of the requisite community of interest so long as every member of the alleged class would not be required to litigate numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment which determined in plaintiffs' favor whatever questions were common to the class." (*Ibid.*)

*Ascertainability of Class*

■ Wilner alleges that she is bringing the action "on behalf of all persons and/or entities residing in California who have (or had at the time of

the policy's termination) an ownership interest in one or more permanent[, or universal,] life insurance policies that were issued by [Sunset] . . . which were purchased as a result of deceptive or fraudulent sales practices described herein from January 1, 1985 to the present . . . and were thereby harmed . . . ." This describes the class sufficiently to make it ascertainable. (*Vasquez v. Superior Court, supra,* 4 Cal.3d at pp. 810-811.)

*Community of Interest*

 To establish successfully a community of interest in this case, plaintiff must demonstrate that Sunset "made false representations with knowledge of their falsity, that these representations were made with intent to and did induce reasonable reliance by plaintiff[], and that plaintiff[] suffered damages as a result." (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 811.) As did the defendant in *Vasquez,* Sunset argues "that none of these elements may be proved by the device of a class action because each plaintiff entered into a separate transaction at a different time and proof of the fact of representation, its falsity, and reliance as to the named plaintiffs will not supply proof of these elements as to the absent members of the class. Thus, it is asserted, each member of the class must establish his right to recover on the basis of facts peculiar to his own circumstances, because of which the action may not be tried as a class action." (*Ibid.*) As the Supreme court noted in *Vasquez,* however, that the transaction between Sunset and each class member was consummated separately "is not determinative so long as each class member will not be required to litigate numerous and substantial issues to establish [that member's] individual right to recover." (*Ibid.*)

*Representations*

 Wilner alleges that Sunset, through its agents, "engaged in a common course of conduct designed to induce thousands of [its] existing and prospective policyholders to purchase 'replacement' or 'financed' life insurance policies for [it] by using the cash value of . . . existing policies, by surrendering, borrowing or stripping such cash or cumulative value for the purchase of new policies [Sunset] issued." It "developed and implemented and otherwise sanctioned a wide spread scheme to sell replacement life insurance policies to prospective policy holders." These practices are otherwise known as "churning, improper replacement, twisting or piggy backing."

Sunset and its agents "knew that by replacing or 'twisting' . . . insurance coverage [they] would realize profits without due regard to plaintiff's actual insurance needs." "Twisting" is the making of misrepresentations "for the

purpose of inducing a person to take out a policy of insurance or misrepresentations made to induce a policyholder to lapse, forfeit or surrender their insurance policies." Insurance Code section 781 "specifically prohibits representations or comparisons of insurers and policies which are misleading, and made for the purpose of inducing the insured to lapse, forfeit or surrender their policies."

Sunset and its agents "removed all or part of the cash value from . . . older existing policies to purchase new policies from [Sunset]. Among other things, [Sunset] and its agents failed to disclose that using the cash value of existing policies to finance the purchase of new policies was not in the best interest of the policyholder, but resulted in significant benefits" to the insurer and its agents. Sunset "encouraged and enabled its Agents to utilize the churning scheme throughout the Class Period." The agents were rewarded for churning policies.

Sunset and its agents "failed to disclose . . . that in purchasing new policies they would lose substantial cash values, accumulation account values, pay new and significant commission charges, be subject to new contestability clauses, cash surrender charges, and pay more for insurance at an older insurable age." Sunset also failed to disclose to plaintiff and to class members that "[t]here are material adverse financial consequences whenever a policyholder surrenders or borrows against an existing policy to purchase a new policy. . . . The cash value or accumulation in the existing policies would be depleted by the purchase of the new policy. . . . Ultimately, the death benefits in their new policies would be eliminated or reduced by the depletion of the cash value and the policyholder would then owe significant higher premiums on the new policy. . . . As a result of the [above described] actions . . . , Plaintiff and the Class Members were deceived into believing that they had obtained higher death benefits for a specified premium payment. However when the cash or accumulation value in existing policies is exhausted, the policyholders have been or will be required to pay unexpected additional premiums for the new policies or allow the policies to lapse."

Sunset materially misrepresented to plaintiff and the class members that "the purchase of the [universal life] policy was in [their] best interest . . . , the cash values built up in existing policies would remain intact in connection with the purchase of the new policies, that significantly higher death benefits could be obtained with payment of the same premium paid for existing policies." Plaintiff and the class members relied on these misrepresentations to their detriment by purchasing universal life policies and "surrendering or otherwise using cash values from existing policies" to make such purchases.

Sunset knew the class members "were unsophisticated insurance consumers, ill equipped to understand the unfamiliar technical language of the policies or the complex method of determining the premiums and payment schedules." Sunset "knowingly failed to supervise and train its Agents not to engage in improper sales activities." It "also failed to implement any system to identify and prevent sales which were not in the best interest of the policyholder or to monitor and identify improper sales and to reprimand and dismiss Agents who engaged in improper and fraudulent sales."

Sunset "affirmatively concealed . . . that [universal life insurance policy purchasers] had been the subject of fraud, material misrepresentation and omissions . . . ." Moreover, Sunset "has engaged in a course of conduct intended to terminate [purchasers'] rights in the insurance policies in order to prevent discovery of the fraudulent and inappropriate replacement sales by contacting [the purchasers] to induce them to surrender policies in which the cash value has been depleted."

In other words, Wilner alleges that the material representations made to those who ultimately purchased replacement universal life policies always were the same. She also alleges that these were *mis*representations, or falsehoods. In addition, Wilner alleges that Sunset withheld the same material facts from all purchasers and concealed the same actionable conduct from them. She also alleges intent to induce reliance as to all purchasers, as well as all purchasers' reliance on Sunset's deception.

As in *Vasquez*, there does not appear to be "[any] singular difficulty" (*Vasquez v. Superior Court, supra*, 4 Cal.3d at p. 812) in proving what common representations Sunset and its agents made to universal life insurance policy purchasers, the materiality of these representations and whether they were false. We perceive no greater difficulty in proving on a common basis whether there are, indeed, significant detriments to replacing existing policies with the new universal life polices and whether Sunset's agents in fact concealed this from prospective purchasers. While there may be some individual considerations, "we cannot assume [at the pleading stage] that [Wilner] will be unable to establish [her] allegations without the separate testimony of each class member; at least [she] must be afforded the opportunity to show that [she] can prove [the] allegations on a common basis." (*Id.* at p. 813.)

Moreover, "[t]here may be other methods by which [Wilner] can establish the alleged *falsity* of the representations regarding the [universal life insurance policies] for the class as a whole. For the purpose of determining if the demurrer[] should have been overruled, it is sufficient that there is a

reasonable possibility [Wilner] can establish a prima facie community of interest among the class members on the false representation issue. Plaintiffs' inability to do so, if that be the ultimate result, can be determined at a later stage of the proceeding." (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 813.)

*Reliance*

■ As noted in *Vasquez,* "it is not necessary to show reliance upon false representations by direct evidence. 'The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.' [Citations.]" (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 814.) Stated otherwise, " '[w]here representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed[, or inferred,] that the representations were relied on.' [Citation.]" (*Ibid.*) Accordingly, should the trial court find upon an evidentiary hearing that Sunset made material misrepresentations to the class members, "at least an inference of reliance would arise as to the entire class." (*Ibid.,* fn. omitted.)

That reliance was justified also may be proven on a class basis. "If the court finds that a reasonable [person] would have relied upon the alleged misrepresentations, an inference of justifiable reliance by each class member would arise. It should be noted in this connection that a misrepresentation may be the basis of fraud if it was a substantial factor in inducing the plaintiff to act and that it need not be the sole cause of damage. [Citation.]" (*Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 814, fn. 9.)

*Damages*

■ As discussed *ante,* that each purchaser may have separate damages is not a bar to maintenance of a class action. Wilner has alleged the nature of the damages. No more is necessary.

In summary, the class action allegations of the first amended complaint adequately allege the existence of an ascertainable class. Moreover, Wilner may be able to demonstrate a community of interest as to the elements of the fraud claims, apart from damages suffered by each class member. She therefore should be afforded an opportunity to demonstrate that "proof of most of the important issues as to [her] will supply the proof as to all."

(*Vasquez v. Superior Court, supra*, 4 Cal.3d at p. 815.) The trial court erred in sustaining without leave to amend the demurrer to the class action allegations of the first amended complaint.

This conclusion poses something of a procedural problem. Wilner's second amended complaint superseded the first amended complaint. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1119, p. 575.) It supersedes the first amended complaint as it existed after the court sustained the demurrer to its class action allegations, however. Those allegations thus no longer were part of the first amended complaint when it was superseded. This leaves the class action allegations floating, as it were, on the ether. As a matter of practicality, we shall direct the trial court to deem the class action allegations to be incorporated into the second amended complaint, which, of course, contains no such allegations.

*Writ Proceeding*

## II

Sunset asserts the trial court abused its discretion in overruling its demurrer to the sixth cause of action, for violation of California's unfair competition law (Bus. & Prof. Code, §§ 17200-17209),[3] of Wilner's second amended complaint. We disagree.

As explained in *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 42 [77 Cal.Rptr.2d 709, 960 P.2d 513], the unfair competition law "permits 'any person acting for the interests of itself, its members or the general public' (§ 17204) to initiate an action for restitutionary and/or injunctive relief (§ 17203) against a person or business entity who has engaged in 'any unlawful, unfair or fraudulent business act or practice [or] unfair, deceptive, untrue or misleading advertising [or] any act prohibited by Chapter 1 (commencing with Section 17500 [false advertising]) . . . .' (§ 17200.)" The coverage of section 17200 "is 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527], fn. omitted.)

The use of the disjunctive in section 17200, "referring to 'any unlawful, unfair *or* fraudulent' practice," (italics in original) means that "a practice may be deemed unfair even if not specifically proscribed by some other

---

[3]All further statutory references are to the Business and Professions Code unless otherwise noted.

law." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th at p. 180.) " ' "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' [Citations.]" (*Ibid.*) The unfair competition law has such a broad scope " 'to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . [section 17200] was intentionally framed in [such a broad manner] precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " [Citation.]' " (*Id.* at p. 181.)

As stated in *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093 [53 Cal.Rptr.2d 229], "The test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . . [Citations.]' [Citation.]" (At pp. 1103-1104.) Stated otherwise, a business practice is unfair when it " 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' [Citation.]" (*Id.* at p. 1104.)

A claim of unfair business practice may be based on a " ' "pattern of behavior" [citation], or "a course of conduct." ' " (*Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 519 [63 Cal.Rptr.2d 118].) A single instance of such conduct may suffice. (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 [58 Cal.Rptr.2d 89].) A pattern of misleading oral representations, made by the defendant's agents, may qualify as an unfair business practice. (*People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119, 129 [259 Cal.Rptr. 191].)

There can be no question but that the sixth cause of action of Wilner's second amended complaint alleges a pattern of behavior or course of conduct constituting an unfair business practice or practices. Wilner alleges that from the mid-1980's through the present, Sunset actively and enthusiastically has pursued the sale of universal life insurance policies as a replacement for whole or term life insurance policies that consumers had purchased from other companies. Sunset does this knowing that such replacement seldom, if ever, is appropriate. In short, Sunset encourages outside replacement sales whether or not the transactions are in the best interest of the policyholder.

To foster and encourage the replacement of preexisting insurance polices issued by other companies with Sunset's universal life polices, Sunset

provides its agents with computer materials, illustrations marketing materials, advertisements, regular publications and training materials. These materials instruct the agents in how to manipulate premium schedules to convince prospects that a drop-down investment in a universal life policy will generate enough investment return to maintain the stated premium schedule without additional out-of-pocket payments and to provide double, triple or better death benefits. These manipulations are deceptive.

Specifically, the computer software Sunset provided to its agents produced illustrations that contained incomplete and misleading information concerning the projected benefits of the policy. The illustrations omitted information concerning the cost of insurance, the cost of replacement and other relevant information. Sunset's marketing materials convey the same misleading impression. Sunset has failed to disclose to consumers that replacement of an existing life insurance policy with a universal life policy would cause the consumer to lose substantial cash values and accumulation account values and would require the payment of significant new commission charges and other costs. Sunset also has failed to disclose that replacement would subject consumers to new contestability clauses and cash surrender charges and would require consumers to pay more for insurance at an older insurable age. Sunset has engaged in these activities knowing that most consumers are not sophisticated in the investment vehicle represented by universal life policies.

As a consequence of these activities, universal life purchasers have been deceived into believing they had obtained higher death benefits for a specified premium that was either lower or no higher than the premium schedule on their existing life insurance policies. In fact, contrary to the belief fostered in universal life purchasers, they would have further out-of-pocket expenses in the future.

Sunset continues its deceptive practices by taking control of the existing policies through assignments. Its exchange forms and agents deliberately have failed to tell consumers that replacement means they will be paying substantial cash surrender charges, fees, and other costs to the insurance company that issued the policy to be replaced.

The practices Sunset employs and encourages its agents to employ are contrary to those followed when considering replacement of Sunset's own policyholders' preexisting life insurance policies. In the latter instance, Sunset requires a review of the proposed replacement policy, comparing the benefits and costs of the existing policy to those of the proposed replacement, and a consequent determination that replacement is in the best interest

of the policyholder. Sunset also imposes commission restrictions on the sale of replacement universal life policies. In the former instance, however, Sunset requires no justification for replacement, encourages replacement sales without consideration of the relative costs and benefits and imposes no commission restrictions on its agents.

Sunset continues to conceal the inferior value of the universal life policies by representing falsely to policyholders that additional premiums are required to maintain the policies, in that they failed to perform as well as anticipated due to uncontrollable circumstances. In fact, due to deliberate under-funding at the outset, failure of the universal life policies is inevitable unless additional premiums are paid.

These allegations clearly describe immoral, unethical and unscrupulous conduct, i.e., unfair business practices. (§ 17200; *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1104.) Relying on *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699 [262 Cal.Rptr. 899], however, Sunset argues that plaintiff cannot maintain the cause of action on behalf of anyone but herself. Sunset's reliance is misplaced.

In *Bronco Wine Co.,* a grape grower sued under section 17200 to challenge certain practices of a bulk winemaker, which allegedly led to underpayments for the grower's grapes. The conduct of which the grower complained included "wrongfully rejecting and refusing to accept grapes, adopting arbitrary quality standards, applying quality standards unreasonably in order to pay less for accepted grapes than the price [to which the winemaker had agreed], and threatening to sue and suing growers who complained of [the winemaker's] conduct." (*Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at p. 715.) The winemaker sought to strike claims on behalf of nonparty growers or, alternatively, class certification, arguing that other grape growers should be included as parties. The court denied both requests. (*Id.* at pp. 715-716.)

At trial, only one nonparty grower appeared as a witness. That grower testified he had no objection to the amount he received for his crop. (*Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at p. 716.) The court ultimately awarded restitution not only to the grower who sued but as well to nonparty growers who had not released the winemaker from liability. (*Id.* at p. 717.)

The appellate court noted that "[t]he procedure utilized with regard to the nonparty growers raises serious fundamental due process considerations.

Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. [Citations.] Due process is denied because the nonjoined party has not been given notice of the proceedings or an opportunity to be heard. [Citation.] . . . [¶] For over 50 years California has recognized that a judgment may not be entered either for or against one who is not a party to an action or proceeding. [Citations.] . . . [T]his doctrine has common law antecedents. [Citation.]" (*Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at pp. 717-718.)

The *Bronco Wine Co.* court distinguished the circumstances of the case before it from those present in *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758 [259 Cal.Rptr. 789]. In *Dean Witter Reynolds, Inc.,* the court held that it was an abuse of discretion to allow an unfair competition action to proceed as a class action without a showing that class treatment was demonstrably superior to an individual, representative action. (At p. 772.) The court concluded that, in an unfair competition lawsuit, the trial court "is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action." (*Id.* at p. 773.) In reaching this conclusion, however, the court recognized that nonparties generally are not "bound by a judgment unless they were in privity with a party and the adjudication of their rights comports with due process." (*Ibid.*)

At issue in *Dean Witter Reynolds, Inc.,* however, was the propriety of charging each client a $50 fee for withdrawal of an IRA account. As the *Bronco Wine Co.* court noted, "[t]he charge is either a fair or unfair business practice. The only issue in controversy is the legality of the termination fee. The amount of restitution for each person is identical, return of the $50 termination fee." (*Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at p. 720.) In contrast, "[t]he determination of whether the business practice was unfair was a far more complex factual issue" in the case before the *Bronco Wine Co.* court. (*Ibid.*) The amount of potential restitution also was far greater. (*Ibid.*)

In *Bronco Wine Co.,* the growers had separate contracts with the winemaker. Those contracts had different terms. Only 20 of the 100 contracts at issue were before the court. Moreover, some nonparty growers had business reasons for not pursuing breach of contract claims. (*Bronco Wine Co. v. Frank A. Logoluso Farms, supra,* 214 Cal.App.3d at p. 716.) In short, not all of the nonparty growers received notice of the suit and the court did not receive all necessary evidence. In these circumstances, a restitution fund could not be allocated properly. It therefore was an abuse of discretion to deny the winemaker's pretrial motion and prejudicial error to award restitution to the nonparty growers. (*Id.* at p. 721.)

In Sunset's view, the instant matter involves complexities similar to those in *Bronco Wine Co.* Sunset asserts that each claim will turn on what purchasers were told by their independent agents, what documents were provided and disclosed to each, and what documents each purchaser signed. Moreover, evaluation of whether the sale of a replacement policy was against the best interest of a purchaser will turn on individualized characteristics.

To the extent that Wilner seeks through her sixth cause of action to have the court "restore to . . . members of the public any money acquired by Defendants as a result of the unlawful, fraudulent or unfair business acts or practices discussed herein," i.e., restitution, for nonparty purchasers of universal life policies, Sunset may be correct. If so, the remedy would be a motion to strike the 98th paragraph of the second amended complaint should Wilner fail to establish the propriety of a class action following a hearing on that question.

In paragraph 97, however, Wilner seeks injunctive relief under section 17203. She alleges that such relief is "necessary to prevent Defendants from engaging in the unlawful business acts and practices alleged herein. Defendants and each of them have engaged in, are now engaging in, and will continue to engage in the above-described acts and practices unless restrained or enjoined by this Court. Given Defendants['] prior practices, the greatly increased sales volumes, profits, and commissions which have been and can be earned, such practices present an irresistible incentive to continue making, encouraging, ratifying, or turning a blind eye toward unlawful life insurance sales. These acts and practices, therefore, will cause great and irreparable harm to the general public unless defendants are restrained from committing further unlawful business acts or practices. Plaintiff and the general public, as a result of the foregoing, have no other adequate remedy at law."

The request for injunctive relief is valid not only on behalf of plaintiff but on behalf of all aggrieved members of the public without pursuit of a class action. Allowing trial on this claim does not present the due process risks inherent in a broad restitution claim. Moreover, "the management of a class action is 'a difficult legal and administrative task,'" in contrast to the "streamlined procedure" established in section 17200. (*Dean Witter Reynolds, Inc. v. Superior Court, supra,* 211 Cal.App.3d at p. 773.) "Its only apparent advantage to victims of an unlawful business practice vis-à-vis an individual action under the unfair competition statute, is that it may theoretically afford them a better opportunity to protect their interests." (*Ibid.*) If that is not the case, then class certification is unnecessary.

To be sure, if this matter ultimately does not proceed as a class action, the possibility that nonparties may pursue their own remedies poses a risk to Sunset. Inasmuch as Sunset has opposed class certification, however, it should "not be heard to complain later if it suffers adverse consequences as a result." (*Dean Witter Reynolds, Inc. v. Superior Court, supra,* 211 Cal.App.3d at p. 773-774.)

The order sustaining without leave to amend the demurrer of the class action allegations of Wilner's first amended complaint is reversed. The superior court is directed to deem those allegations to be incorporated into the second amended complaint. The petition for a writ of mandate is denied. Wilner is to recover her costs on appeal.

Ortega, J., and Masterson, J., concurred.

A petition for a rehearing was denied March 23, 2000, and on March 30, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 2, 2000.