**Linda MARSHALL, Plaintiff,**

v.

**STANDARD INSURANCE COMPANY; Does 1 through 20, inclusive, Defendants.**

**Case No. CV 00–07962 MMM (BQRx).**

United States District Court, C.D. California.

Oct. 30, 2000.

---

4. Indeed, it is the employees who face the most significant and immediate immigration

sanctions.

Robert S. Gianelli, Sherril Nell Babcock, Gianelli & Morris, Los Angeles, CA, Ray-

mond E. Mattison, Ernst & Mattison, San Luis Obispo, CA, for plaintiff.

Shawn E. Hanson, Katherine S. Ritchey, Anthony P. Schoenberg, Pillsbury Winthrop, San Francisco, CA, for defendant.

### ORDER RE DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

MORROW, District Judge.

This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Act, Business & Professions Code §§ 17200 et seq. Plaintiff Linda Marshall was insured by defendant Standard Insurance Company under a group disability policy issued to Marshall's employer, the City of Lompoc. Standard has moved to dismiss Marshall's third cause of action for unfair business practices, to the extent it purports to seek relief on behalf of the general public. Alternatively, Standard seeks an order striking Marshall's prayer for disgorgement and injunctive relief.

### I. FACTUAL BACKGROUND

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is limited to the contents of the complaint. See *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir.1996). The court must accept as true all allegations of material fact set forth in the complaint, and construe them in the light most favorable to the non-moving party. See *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996). Accordingly, this statement of facts recites and accepts as true the allegations contained in Marshall's complaint.

### A. The Policy

Standard insured Marshall under a group disability policy issued to her employer, the City of Lompoc (the "policy").[1] Pursuant to the terms of the policy, Marshall and/or the City of Lompoc agreed to pay premiums and, in return, Standard promised to pay benefits to Marshall in the amount of 66.66% of her basic monthly earnings if she became totally disabled. The policy defined total disability as follows:

"During the first 24 months of disability, disability means complete inability of the Member to engage in her regular occupation. Thereafter during the continuance of the same period of disability, disability means the complete inability of the Member to engage in any employment or occupation for which he is or becomes reasonably fitted by reason of education, training or experience."[2]

### B. Marshall's Claim

Marshall alleges that, while the policy was in effect, she became totally disabled.[3] She asserts that she performed all conditions precedent to recovery of benefits under the policy, and specifically that she made a claim and filed an appropriate proof of loss.[4]

Standard agreed that Marshall was entitled to disability benefits, and paid such benefits through January 13, 2000. Marshall alleges that it has refused to pay benefits from and after that date, and that it has also offset workers' compensation benefits in an allegedly illegal manner.[5]

---

1. Complaint, ¶ 3.

2. *Id.*, ¶ 4.

3. *Id.*, ¶ 6.

4. *Id.*, ¶ 7.

5. *Id.*, ¶ 8.

## C. Standard's Claims Handling Practices

Marshall contends that Standard's denial of benefits was the result of bad faith claims handling,[6] specifically, a failure to investigate properly the facts surrounding her claim, and to review and credit medical and employment information demonstrating that she was totally disabled.[7] Marshall further charges that Standard uses the "changing . . . language of the definition of disability" to deny allegedly valid claims (presumably including her own). In this regard, she asserts that, after twenty-four months, Standard denies claims on the basis that insureds are not disabled from performing occupations other than their regular one despite the fact that there is no material difference between the jobs. Moreover, she alleges that Standard disregards "elements . . . of [the other] occupation [definition] . . . set forth in the [policy] and . . . controlling California case law."[8] Finally, Marshall asserts that Standard knowingly uses "erroneous standards" in determining whether to pay total disability claims.[9]

As a result of Standard's termination of benefits and alleged bad faith claims handling, Marshall alleges that she is entitled to recover damages equal to the benefits she would have received under the policy from and after January 13, 2000, as well as damages for emotional distress.[10] Additionally, on behalf of the general public, Marshall seeks issuance of an order enjoining Standard from denying future claims on the bases described in the complaint, and directing that it reopen the claim of any California insured it denied in reliance on the "changing definitional language" in the policy.[11] Marshall also seeks an order directing Standard to disgorge any profits it has realized as a result of its claims handling practices.[12]

## II. DISCUSSION

### A. Legal Standard Governing Motions To Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1356 (1990).

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997); *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley, supra*). In other words, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). As noted above, in deciding a motion to dismiss for

---

6. *Id.,* ¶ 12.

7. *Id.,* ¶ 12.

8. *Id.,* ¶ 12.

9. *Id.,* ¶ 12. Marshall contends that Standard has engaged in other acts of bad faith not presently known to her, and reserves her right to assert them in this action. (*Id.,* ¶ 12.)

10. *Id.,* ¶¶ 9, 13.

11. *Id.,* ¶ 18.

12. *Id.,* ¶ 19.

failure to state a claim pursuant to Rule 12(b)(6), the court's review is limited to the contents of the complaint. See *Campanelli, supra,* 100 F.3d at 1479; *Allarcom Pay Television, Ltd. v. General Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. See *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995). It need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

Because Rule 12(b)(6) review is confined to the complaint, the court may not consider material outside the pleading (e.g., facts presented in briefs, affidavits, or discovery materials). See *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.,* 102 F.3d 1524, 1537 (9th Cir.1996). It may, however, properly consider exhibits submitted with the complaint, documents whose contents are alleged in the complaint when their authenticity is not questioned, and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. See *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). The court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998).

**B. Marshall's Representative Action Under Business & Professions Code § 17200**

Marshall's third claim for relief is brought on behalf of the general public,

and alleges that Standard has engaged in unlawful, unfair, and/or fraudulent business practices in violation of California Business & Professions Code §§ 17200 et seq. She incorporates into this claim her allegation that Standard uses the second prong of the policy's disability definition to deny claims after twenty-four months by asserting that there is some occupation for which the insured is qualified by virtue of education, training, or experience and in which he or she can engage, despite the fact that other possible jobs are not materially different from the occupation the insured previously performed. She also incorporates her allegations that Standard disregards elements of the other occupation definition set forth in the policy and controlling California case law, and that it utilizes "erroneous standards" in determining whether to pay total disability claims.

Any person or entity who has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." CAL. BUS. & PROF.CODE §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair deceptive, untrue or misleading advertising." CAL. BUS. & PROF.CODE § 17200. See also *ABC International Traders, Inc. v. Matsushita Electric Corp. of America,* 14 Cal.4th 1247, 1268, n. 11, 61 Cal.Rptr.2d 112, 931 P.2d 290 (1997). Business conduct need not be illegal to be enjoined under § 17203. See *State Farm Fire & Casualty Co. v. Superior Court,* 45 Cal. App.4th 1093, 1103–05, 53 Cal.Rptr.2d 229 (1996) (holding that a breach of the duty of good faith and fair dealing will support an injunction under § 17200). Rather, the "test ... is that a practice merely be unfair." *Allied Grape Growers v. Bronco Wine Co.,* 203 Cal.App.3d 432, 452, 249 Cal.Rptr. 872 (1988). This requires that the court balance the "the impact of the

practice or act on its victim ... against the reasons, justifications and motives of the alleged wrongdoer." *Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965, 969–70, 69 Cal.Rptr.2d 623 (1997).

Marshall has brought her § 17200 claim on her own behalf and on behalf of the general public. Standard seeks an order dismissing Marshall's § 17200 claim only to the extent it is brought in a representative capacity. It does not challenge her ability to maintain an individual claim.

## C. Whether Marshall Can Properly Maintain A Representative Action Under § 17200 In This Case

Business & Professions Code § 17204 permits plaintiffs to bring actions under the unfair competition statute as representatives of the general public. CAL. BUS. & PROF.CODE § 17204 ("any person acting for the interests of itself, its members, or the general public" may seek relief under the statute). Suits brought by private individuals who seek disgorgement and/or restitution on behalf of persons other than or in addition to themselves, and that are not certified as class actions, are denominated "representative actions." *Kraus v. Trinity Management Servs., Inc.*, 23 Cal.4th 116, 126, n. 10, 96 Cal.Rptr.2d 485, 999 P.2d 718 (2000). Consumer protection attorneys often prefer representative actions to class actions because they do not involve class notification and certification procedures. Since *Barquis v. Merchants Collection Ass'n.*, 7 Cal.3d 94, 108–13, 101 Cal.Rptr. 745, 496 P.2d 817 (1972), California courts have expanded the availability of representative actions in suits brought to protect consumers from a variety of unfair business practices. See generally J. McCall et al., *Greater Representation for California Consumers—Fluid Recovery, Consumer Trust Funds, and Representative Actions*, 46 HASTINGS L.J. 797 (1995)

(exploring the basis in statute and decisional authority for the use of representative actions as a means of consumer protection).

*Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 259 Cal.Rptr. 789 (1989), typifies the type of circumstance in which California courts have approved representative actions to challenge unfair business practices. There, Manuel Abascal, the real party in interest, opened an individual retirement account with Dean Witter Reynolds, Inc. Two years later, when he liquidated the account, Dean Witter deducted a fifty-dollar "termination fee." Abascal sued, alleging three unlawful business practices: (1) assessment of the fifty-dollar termination fee; (2) assessment of a twenty-dollar "annual maintenance fee" on January 1 of each year rather than on the anniversary of the opening of the account; and (3) failure to rebate a pro rata portion of the annual maintenance fee when an account was closed before year's end. Abascal brought the action on behalf of all persons who had established a Dean Witter IRA subject to the fifty-dollar termination fee, and all persons who had paid such a fee. On Abascal's motion, the trial court ordered that the suit proceed as a class action. *Id.* at 762–63, 259 Cal.Rptr. 789.

On appeal, Dean Witter argued that class certification was inappropriate, since there was no showing that "class treatment was ... demonstrably superior to an individual action ... under [the unfair competition] statutes." *Id.* at 772, 259 Cal. Rptr. 789. The Court of Appeal agreed, and vacated class certification, noting that the suit could proceed as a representative action, a "streamlined procedure expressly provided by the Legislature" and designed to avoid the difficulty and expense entailed in class notification and certification. *Id.*

at 773, 259 Cal.Rptr. 789. The court observed that a class action's

"... only apparent advantage to victims of an unlawful business practice, vis-a-vis an individual action under the unfair competition statute, is that it may theoretically afford them a better opportunity to protect their interests.... Nothing in the record before the trial court, however, gave substance to this abstract possibility in the context of the present case. Absent persons generally are not bound by a judgment unless they were in privity with a party and the adjudication of their rights comports with due process.... The possibility that such persons will pursue their own remedies may pose some threat to the defendant; here, however, the defendant opposes class certification and will presumably not be heard to complain later if it suffers adverse consequences as a result." *Id.* at 773–74, 259 Cal.Rptr. 789.

The court in *Dean Witter* thus recognized that under certain circumstances, representative actions may reduce affected consumers' ability to protect their interests and threaten the defendant with a multiplicity of actions leading to inconsistent results. *Id.* In *Bronco Wine Co. v. Frank A. Logoluso Farms,* 214 Cal.App.3d 699, 262 Cal.Rptr. 899 (1989), the court confronted just such a situation. There, a grape grower sued a winery for breach of a contract to purchase the grower's grapes. The grower's complaint included a cause of action for unfair business practices under § 17200, and sought restitution on behalf of "all growers under contract to [the winery] in 1982." *Id.* at 715, 262 Cal.Rptr. 899. It asserted that the winery had wrongfully rejected grapes, adopted arbitrary quality standards, applied quality standards so as to pay less for grapes than the price contemplated by the growers' contracts, and sued and threatened to sue growers who complained of these practices. *Id.* The winery's motions to strike the claims asserted on behalf of non-party growers, or alternatively, to require that the matter proceed as a class action were denied. *Id.* at 715–16, 262 Cal.Rptr. 899. Thereafter, the trial court awarded restitution damages to twenty-seven growers, concluding that the winery secretly determined the price it would pay on the basis of visible defects in the grapes rather than sugar content, resulting in substantial underpayments to the growers. *Id.* at 717, 262 Cal.Rptr. 899.

On appeal, the court reversed this aspect of the judgment, stating that "[t]he procedure utilized with regard to the non-party growers raises serious fundamental due process considerations." *Id.* at 717, 262 Cal.Rptr. 899. In so doing, it acknowledged dictum in *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 453–54, 153 Cal.Rptr. 28, 591 P.2d 51 (1979), apparently endorsing the use of representative actions,[13] as well as the result in *Dean Witter. Id.* at 719, 259 Cal.Rptr. 789. The court noted, however, that *Fletcher* had been a class action, and that the court there had qualified its comments with the admonition that " '[b]efore exercising its discretion [to permit a representative action], the trial court must carefully weigh both the advantages and disadvantages of an individual action against the burdens and benefits of a class proceeding for the underlying suit.' " *Id.* (quoting *Fletcher, supra,* 23 Cal.3d at 454, 153 Cal.Rptr. 28, 591 P.2d 51).

The court also found *Fletcher* and *Dean Witter* distinguishable on their facts:

---

13. *Fletcher* was a class action by bank customers that challenged the bank's computation of per annum interest on the basis of a 360-day year. See *Fletcher, supra,* 23 Cal.3d at 445–46, 153 Cal.Rptr. 28, 591 P.2d 51.

"The determination of whether the business practice was unfair was a far more complex factual issue in the instant case than in either *Fletcher* or *Dean Witter Reynolds*. Also, the potential amount of restitution in the instant case is far greater than in *Fletcher* or *Dean Witter Reynolds*. The process of determining the amount of restitution to award is not the automatic calculation that it was in *Dean Witter Reynolds*. Whatever propriety there may be in allowing an individual, representative action in *Dean Witter Reynolds* does not exist in the instant action. The trial court's denial of Bronco's pretrial motion led to the insurmountable control and management problems associated with awarding judgments for or against nonparties not subject to the court's jurisdiction." *Id.* at 720, 259 Cal.Rptr. 789.

 *Bronco Wine* thus identified several factors a court should take into account in determining the availability of a representative action: (1) whether adjudication of the unfair business practice claim requires resolution of complex factual issues; (2) whether determining the amount of restitution would require something other than a straightforward calculation; (3) whether the amount of restitution that might be awarded non-parties is nominal; (4) whether the amount of restitution to which each non-party would be entitled is identical; and (5) whether entering judgment for or against non-parties would pose insurmountable *control and management* problems.[14] See *id.* at 720–21, 249 Cal. Rptr. 872.

Cases since *Fletcher, Dean Witter,* and *Bronco Wine* provide "a spectrum of factual scenarios" in which plaintiffs have attempted to use a representative action to assert claims on behalf of a large class of consumers. *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 672–73 (C.D.Cal.2000). At one end of the spectrum are cases analogous to *Fletcher* and *Dean Witter.* In *Cortez v. Purolator Air Filtration Products Co.,* 64 Cal.App.4th 882, 75 Cal. Rptr.2d 551, 558–59 (1998), aff'd. as modified, 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000), for example, the California Court of Appeal endorsed use of a representative action brought on behalf of employees of the defendant for overtime wages, since "the method used to calculate the amount of overtime [was] identical for each employee," and defendant did "not face the possibility that individual persons [would] pursue their own remedies [because] the statute of limitations ... ha[d] run." Similarly, in *Kraus v. Trinity Management Services, Inc.,* 57 Cal.App.4th 709, 67 Cal.Rptr.2d 210, 221–22 (1997), rev'd. as to disgorgement remedy, 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 999 P.2d 718 (2000), the California Court of Appeal permitted six tenants to sue the owners and managers of fifty apartment buildings as representatives of all tenants who had lived there since "[p]laintiffs' claims involved relatively small amounts of money" and "did not involve the sort of complex factual issues with which the *Bronco Wine* court wrestled." It noted that, "[d]espite the fact that different tenants may have paid different monthly rents (and thus different liquidated damages), the[ ] amounts did not vary so greatly and were not so large as to preclude the trial court from ascertaining them without the benefit of a certified class." *Id.*

At the other end of the spectrum are cases in which the circumstances more closely parallel those in *Bronco Wine.* In

---

**14.** The court also considered the fact that a separate administrative process existed that offered non-parties an inexpensive and effective remedy. *Id.* at 721–22, 153 Cal.Rptr. 28, 591 P.2d 51.

*Nachum v. Allstate Insurance Co.,* 1997 U.S. Dist. LEXIS 12670, * 2–5 (C.D.Cal. July 21, 1997), Judge Audrey B. Collins concluded that allowing a suit alleging bad faith handling of earthquake property damage claims to proceed as a representative action would have required litigation of the "individualized bad faith claims of each currently unidentified nonparty." *Id.* at * 17. In *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 673–74 (C.D.Cal.2000) Judge Dickran Tevrizian refused to permit maintenance of a representative action against a credit reporting agency that allegedly placed inaccurate information in plaintiff's credit report and failed to correct it since "[p]laintiff did not necessarily experience the same treatment as other consumers at the hands of [defendant]," and "the probability that any other consumer incurred damages similar to Plaintiff's, like the identical $100 payments in *Kraus,* is also very low." *Id.* See also *South Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal.App.4th 861, 897, 85 Cal.Rptr.2d 301 (1999) (determining that defendant GMAC's conduct was "not sufficiently uniform to allow representative treatment" in an automobile dealership's lawsuit challenging GMAC's method of calculating loan interest).

### D. Whether A Representative Action Under § 17200 Is Appropriate In This Case

■ Applying the *Bronco Wine* factors to Marshall's § 17200 claim, the court concludes that it is not properly prosecuted as a representative action to the extent it seeks disgorgement of profits realized as a result of Standard's allegedly unfair processing of disability claims and an injunction directing that claims be reopened and re-evaluated. Marshall rests her claim of unfair business practices on three allegations: (1) that Standard uses the second prong of the policy's disability definition wrongfully to deny claims after twenty-four months; (2) that it disregards elements of the other occupation definition set forth in the policy and controlling California case law, and (3) that it utilizes "erroneous standards" in determining whether to pay total disability claims. Proof of these allegations would require examination of the claims files of hundreds, if not thousands, of insureds to determine whether the occupation in which they engaged prior to becoming disabled was "not materially different" from the occupation(s) in which Standard asserted they could engage after twenty-four months. It would also require evaluation of the medical evidence in Standard's possession at the time it made its benefits decision to determine whether the termination was medically justified. The occupations in which the insureds were engaged prior to disability undoubtedly span a wide range of industries and professions, complicating even further any determination as to whether Standard uniformly denied claims based on an improper or illegal interpretation of the other occupation clause.

Moreover, the amount of restitution to which any non-party would be entitled could not be determined through a simple, straightforward mathematical calculation. Claims would have to be re-examined in light of the court's findings regarding the proper definition of "other occupation," and subjective judgments would have to be made as to whether additional benefits were payable. These judgments might themselves be open to collateral challenge on a number of bases. If it were ultimately determined that benefits beyond twenty-four months were payable to any given insured, questions would then arise as to the period of time for which benefits were due. This would require evaluation of updated medical information and necessitate

further subjective application of the "other occupation" definition in the policy. The process would not only be complicated, but would be different for each insured. Compare *Dean Witter, supra,* 211 Cal.App.3d at 762, 259 Cal.Rptr. 789 (potential restitutionary award involved a fifty-dollar termination fee and a sum or all of a twenty-dollar "annual maintenance fee" that Dean Witter charged each of its customers pursuant to a standard procedure).

The amount of restitution Standard was required to pay an individual insured would almost certainly not be nominal, since claims could involve months, if not years, of disability benefits. Furthermore, it would not be identical, given differing insurance agreements, levels of prior earnings, length of disability, time since denial of the claim, and offsetting income.[15] Ensuring that benefits were properly calculated and that an appropriate definition of "other occupation" had been used would pose enormous control and management problems for the court, which would have to retain jurisdiction to supervise Standard's reconsideration and redetermination of a large number of claims. Moreover, substantial rights of individuals who were not parties to the action and not subject to the court's jurisdiction would be affected. For these reasons, the action is not one in which a representative action is "a preferable procedure to a class action," since maintenance of the suit as a class action would "best ... assure[ ]" that the interests of potentially affected insureds are adequately represented. *Fletcher, supra,* 23 Cal.3d at 454, 153 Cal.Rptr. 28, 591 P.2d

51. Rather, the subjective judgments inherent in ascertaining whether Standard has applied an improper definition of "other occupation" in a given insured's case, the complexity of the possible restitution calculations, and the magnitude of the potential awards make this case one in which substantial due process concerns would arise if a representative action seeking disgorgement and the reopening of files were allowed. See *Bronco Wine, supra,* 214 Cal.App.3d at 717, 262 Cal.Rptr. 899.

### E. Sufficiency Of Allegations On Behalf Of The General Public

■ As an alternative basis for dismissal, Standard argues that Marshall's allegations lack the particularity required to state a claim under § 17200. See *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F.Supp. 1303, 1316 (N.D.Cal.1997) (a "plaintiff alleging unfair business practices under the unfair competition statutes 'must state with reasonable particularity the facts supporting the statutory elements of the violation,'" quoting *Khoury v. Maly's of California,* 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993)). Standard asserts that Marshall's allegations are specific to her disability claim, and do not address in any respect which of Standard's business practices are allegedly unfair to the general public. This contention misreads the complaint, which alleges that Standard "routinely" denies claims by misapplying the "other occupation" prong of the disability definition, and "routinely" disregards elements of that definition set

15. Standard argues that additional complications render use of a representative action inappropriate, including possible res judicata and statute of limitations issues, as well as possible preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"). The court agrees that these considerations could add to the potential management problems, but believes that many could be addressed by excluding from the scope of any injunctive order claims that are barred by limitations, res judicata or other legal doctrines and/or where ERISA would preempt any order granting relief under § 17200.

forth in the policy and case law.[16] Marshall's additional allegation that Standard uses "erroneous standards for determining whether to pay a total disability claim," [17] however, is too vague to satisfy the *Silicon Knights/Khoury* test. Marshall does not identify the "erroneous standards" Standard employs, and provides no facts from which they can be ascertained. To the extent, therefore, that Marshall's § 17200 claim relies on her allegation regarding "erroneous standards," it is not sufficiently definite and is dismissed. To the extent Marshall elects to proceed with her § 17200 claim in an individual (as opposed to representative) capacity, this dismissal is with leave to amend so that Marshall may specify the practices about which she complains.

In her opposition to the instant motion, for example, Marshall asserts that "Standard impermissibly uses worker's compensation payments as set-offs—as a company-wide business practice." [18] Her complaint, however, contains no allegations of this nature. Indeed, the only reference to workers' compensation offsets is found in Marshall's first claim for relief, where she alleges that Standard utilized offsets to reduce her benefits.[19] Because there are no allegations that Standard used improper offsets as a routine matter, the issue cannot be considered in evaluating whether Marshall's § 17200 claim is pled with adequate specificity. See *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197, n. 1 (9th Cir.

1998). Should Marshall elect to amend, she may include allegations regarding this subject in her revised complaint.[20]

## F. Certain Of The Injunctive And Disgorgement Remedies Requested Under § 17200 Are Precluded

Standard next asserts that Marshall's request for injunctive relief is moot, and that the disgorgement she seeks is not an available remedy under § 17200. These issues will be addressed in turn.

### 1. Injunctive Relief

Marshall seeks two forms of injunctive relief: (1) an order restraining Standard from utilizing an improper definition of "other occupation" to deny claims for disability benefits beyond twenty-four months; and (2) an order directing that Standard re-open the claims of California insureds whose benefits were terminated at twenty-four months because of its use of an improper definition.[21] As respects the latter form of requested relief, the court's determination that the suit cannot proceed as a representative action renders this prayer moot. As respects the first type of injunction, however, it appears that plaintiff has standing to pursue such relief. See, e.g., *Wilner v. Sunset Life Ins. Co.*, 78 Cal.App.4th 952, 969, 93 Cal.Rptr.2d 413 (2000) (indicating that plaintiff could pursue a representative action to the extent she sought forward-looking injunctive relief applicable to the general public). See also *ABC International Traders*, 14

---

**16.** Complaint, ¶ 12(b).

**17.** *Id.*, ¶ 12.

**18.** Plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp.") at 4:14–16.

**19.** Complaint, ¶ 8.

**20.** In its reply brief, Standard argues that its interpretation of the "other occupation" definition is consistent with California case law.

It also argues that the offsetting of workers' compensation benefits is permissible. The court need not reach these issues, since it has determined that the representative portion of Marshall's § 17200 claim must be dismissed on other grounds.

**21.** Complaint, ¶ 18.

Cal.4th at 1270, 61 Cal.Rptr.2d 112, 931 P.2d 290 (" '[o]ften, no logical connection exists between an order of restitution or disgorgement of past illicit gains and an injunction addressing future conduct' "). Cf. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 170–71, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) (noting that *ABC International Traders* authorizes an order of restitution regardless of whether an injunction to prohibit future violations issues). As the court in *Wilner* stated, "The request for injunctive relief is valid not only on behalf of plaintiff but on behalf of all aggrieved members of the public without pursuit of a class action. Allowing trial on this claim does not present the due process risks inherent in a broad restitution claim." *Wilner, supra,* 78 Cal.App.4th at 969, 93 Cal.Rptr.2d 413. Consequently, should Marshall elect to pursue a claim under § 17200, she may bring such a claim on behalf of the general public to the extent she seeks an injunction against Standard's future use of allegedly unfair claims handling practices.

## 2. Disgorgement

■ Marshall also seeks disgorgement of the profits Standard has earned as a result of its allegedly unfair business practices. Since the court has determined that Marshall may not pursue a representative action that seeks restitution or the reopening of closed claim files other than her own, the disgorgement remedy she seeks is moot to the extent it seeks the payment of monies to other insureds. See *Kraus, supra,* 23 Cal.4th at 127, 96 Cal.Rptr.2d 485, 999 P.2d 718 ("An order that a defendant disgorge money obtained through an unfair business practice may include a restitutionary element, but is not so limited").[22] To the extent Marshall seeks disgorgement other than the "restitution" of benefits withheld by virtue of allegedly unfair business practices,[23] *Kraus* bars the

**22.** As the California Supreme Court explained, restitutionary "orders may compel a defendant to surrender all money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons. It has also been used to refer to surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice." *Kraus, supra,* 23 Cal.4th at 127, 96 Cal.Rptr.2d 485, 999 P.2d 718. See also *Cortez, supra,* 23 Cal.4th at 168, 96 Cal.Rptr.2d 518, 999 P.2d 706 ("Consistent with our conclusion in *Kraus,* that the UCL does not authorize fluid recovery in a representative UCL action, we conclude here that, while disgorgement to a fluid recovery fund of all profit defendant may have earned by withholding overtime wages is not permitted, defendant may be compelled to restore unpaid wages to its employees and former employees. Once earned, those unpaid wages became property to which the employees were entitled. Failure to promptly pay those wages was unlawful and thus an unfair business practice. Section 17203 expressly au-

thorizes orders necessary to restore money or property to any person in interest from whom the money or property has been obtained through an unfair business practice"). Withheld insurance benefits, like withheld overtime wages, would appear to be a proper subject of restitution. See *State Farm Fire & Cas. Co. v. Superior Court,* 45 Cal.App.4th 1093, 1098, 53 Cal.Rptr.2d 229 (1996) ("We find that a cause of action limited to a request for injunctive or restitutive relief can be prosecuted under Business and Professions Code section 17200 based upon an insurer's alleged fraudulent misconduct and breach of the covenant of good faith implied in every policy of insurance"), abrogated on other grounds in *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).

**23.** Because the court has determined that Marshall may not pursue a representative action seeking restitution or a reopening of files, it need not address the parties' arguments as to whether the payment of additional benefits to insureds subject to the twenty-four month limitation would constitute money damages or restitution.

relief for which she prays. In *Kraus,* the California Supreme Court held that disgorgement into a fluid recovery fund is not an available form of relief in a representative action brought pursuant to § 17200. *Kraus, supra,* 23 Cal.4th at 137, 96 Cal. Rptr.2d 485, 999 P.2d 718 ("[W]e conclude that section 17203 does not authorize orders for disgorgement into a fluid recovery fund"). Consequently, Marshall's prayer for disgorgement of profits must be stricken from the complaint.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, or in the alternative, to strike, is granted as follows: Marshall's third claim for relief is dismissed to the extent it pleads a representative action seeking restitution of withheld benefits to insureds other than her or the reopening of disability claims files where the twenty-four month limitation was applied to terminate benefits. Consequently, the court strikes so much of paragraph 18 of the complaint as requests that the court "issue an order that Standard re-open any California files wherein Standard used the changing definitional language of the term disability to deny claims," and all of paragraph 19. Marshall may maintain her third claim for relief as an individual action and as a representative action that seeks injunctive relief directed to future claims handling by Standard. To the extent she seeks to rely on allegedly unfair business practices other than misapplication of the "other occupation" prong of the disability definition, and routine disregard of the elements of that definition set forth in the policy and case law, Marshall must amend her complaint within thirty days of the date of this order to include specific allegations regarding the allegedly unfair practices on which her claim is based. If Marshall fails to file an amended complaint, she will be limited to proving the two forms of allegedly routine practice presently identified in the complaint.