UNITED STATES ex rel. Michael RUHE, Kristine Serwitz and Vincente Catala, and Michael Ruhe, individually, Vincente Catala, individually, and Kristine Serwitz, individually, Plaintiffs,

v.

**MASIMO CORPORATION, Defendant.**

Case No. CV 10–08169–CJC(JCGx).

United States District Court,
C.D. California,
Southern Division.

July 9, 2012.

Shana T. Mintz, AUSA–Office of the U.S. Attorney, Los Angeles, CA, Mark E. Burton, Jr., Nancy Hersh, Hersh and Hersh, San Francisco, CA, for Plaintiffs.

Mark T. Palin, Atkinson, Andelson, Loya, Ruud & Romo, Cerritos, CA, Ryan D. Derry, Thomas Peter O'Brien, Elena R. Baca, Paul Hastings LLP, Los Angeles, CA, for Defendant.

## ORDER DENYING IN SUBSTANTIAL PART DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

CORMAC J. CARNEY, District Judge.

### I. INTRODUCTION AND BACKGROUND

On October 29, 2010, Relators Michael Ruhe, Kristine Serwitz, and Vincente Catala (collectively, "Relators"), former sales representatives employed by Defendant Masimo Corporation ("Masimo"), filed this *qui tam* action and served the complaint on the United States (the "government") along with substantially all material evidence in their possession. On October 22, 2011, Relators filed a First Amended Complaint ("FAC") asserting claims against Masimo for presenting, and causing to be presented, false claims to the government in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A); for creation or use of false statements or records to obtain payment of false claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B); and conspiracy in violation of the FCA, 31 U.S.C. § 3729(a)(1)(C).

Relators allege that they were sales representatives employed by Masimo, generally paid to sell non-invasive hemoglobin measurement devices known as Radical–7, Pronto, and Pronto–7 (the "devices"). "Relators allege that Masimo engaged in [making] a [series of] systematic and repeated fraudulent statements that its hemoglobin measurement devices accurately measured hemoglobin, when in fact the devices were wildly inaccurate." (Pl.'s Opp. Mot. Dismiss, at 2 (citing FAC ¶ 1, 5).) Relators further allege that Masimo's fraudulent statement regarding the devices' accuracy "had a material affect on the government's payment of claims." (*Id.* at 3 (citing FAC ¶¶ 12–14, 19).) Specifically, Relators allege that these actions "caused the government to pay out substantial sums of money it would not have had it known the hemoglobin measurement devices were dangerously defective," (*Id.* at 3 (citing FAC ¶¶ 6, 91).) Relators further allege, to make matters worse, that Masimo applied for, and acquired, a Current Procedural Terminology ("CPT") billing code from the government to use to bill government funded health plans for tests run on beneficiaries of those plans. Relators allege that they, as sales representatives, were directly told to market the devices to physicians by encouraging them to use the CPT code and bill the government for the procedure. (FAC ¶¶ 2–4.) Masimo now moves to dismiss the FAC for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and to strike Exhibits A and B to the FAC. For the following reasons, Masimo's motions are DENIED IN SUBSTANTIAL PART.

### II. ANALYSIS

#### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims assert-

ed. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Claims for fraud, including concealment, intentional misrepresentation and negligent misrepresentation must be pleaded with particularity under Rule 9(b). *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.Cal.2003); *N. Am. Catholic Ed. Programming. Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2000). Allegations of fraud must "state the time, place and specific content of the false representations as well as the parties to the misrepresentations." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988) (quoting *Schreiber Dist. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir.1986)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995).

### 1. False Claim Theory

■ Relators have asserted cognizable theories of liability under the FCA. The FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B). Masimo argues that, to state a claim under the FCA, Relators must allege facts which fit within two judicially created categories: "promissory fraud" or "false certification." The scope and coverage of the FCA, however, is not so limited. The FCA "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the government to pay out sums of money." *United States v. Neifert–White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968). The Supreme Court has further explained that "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the government.'" *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 129, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003) (quoting *Neifert–White*, 390 U.S. at 233, 88 S.Ct. 959). Requesting payment for defective or goods of lesser quality can constitute a cognizable FCA claim. In fact, "[d]efective products were one of Congress's primary concerns when it first enacted the statute in 1863." Sylvia, Claire M., The False Claims Act: Fraud Against the Government § 4:28 (citing Cong. Globe, 37th Cong., 3d Sess. 955 (1863)). Masimo's argument that claims under the FCA must fall into the narrow categories of "false certification" or "promissory fraud" is, thus, unpersuasive and unsupported by the statute, its history, and the Supreme Court's interpretation of the FCA.

■ Relators' allegations fit within the language and purpose of the statute. Relators allege that Masimo made false statements that its devices were effective and accurate. Such representations were material to the use of the defective device by physicians, and the submission of claims for payment to government health programs for a medical procedure that the physicians believed was reasonable and

necessary. The use of a "dangerously inaccurate" test would not be a reasonable and necessary procedure, and Masimo's misrepresentations caused physicians to submit false claims for payment to the government. Simply put, Relators allege that Masimo's systematic and knowing misrepresentations caused the government to have a financial loss by paying for the use of a defective hemoglobin test. Indeed, the FAC alleges that the government "would not have funded non-invasive hemoglobin (SpHb) measurement testing but for Masimo's illegal representatives, marketing, and testing." (FAC ¶ 6.)

### 2. Rule 9(b)

■ Claims brought pursuant to the FCA involve fraud and misrepresentation, and as such, they must meet the particularity requirements set forth in Rule 9(b). Relators here must plead the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003). However, only the fraud elements of the claims must be pled with the specificity required by Rule 9(b). *See Netflix, Inc. v. Blockbuster, Inc.,* 2006 WL 2458717 (N.D.Cal., Aug. 22, 2006). Additionally, the Ninth Circuit has held that "it may be appropriate to relax Rule 9(b)'s heightened pleading standard to the extent that evidence of the alleged false claims lies within [a defendant's] exclusive possession." *United States ex rel. Tamanaha v. Furukawa Am., Inc.,* 445 Fed.Appx. 992, 994 (9th Cir.2011) (citing *United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1052 (9th Cir.2001)).

■ Relators' fraud allegations are sufficient to satisfy the particularity requirement of Rule 9(b). The FAC describes, in great detail, the nature of the misrepresentations made, that Masimo made knowing, false, material statements about the accuracy of its devices and failed to disclose the actual efficacy of the devices to measure hemoglobin. (FAC ¶¶ 1, 5, 12, 25–71, 80, 87–88.) The FAC also describes in great detail the alleged systemic and deliberate actions to misrepresent the efficacy of the devices in selling them to physicians to use with the CPT code for beneficiaries of government health plans. (*Id.* ¶¶ 1–3, 5, 12–14.) The FAC also alleges with specificity how such alleged fraud proximately caused the submission and payment of false claims. (*Id.* ¶¶ 3, 9, 80, 84–85, 90–91.) Importantly, the FAC alleges when and where the misrepresentations were made and who made those misrepresentations. (*Id.* ¶¶ 4, 12–14, 25–71.) Such allegations are more than sufficient to satisfy the objectives of Rule 9(b) "to give notice to defendants of the specific fraudulent conduct against which they must defend" and "to deter the filing of complaints as a pretext for the discovery of unknown wrongs." *Bly–Magee v. Cal.,* 236 F.3d 1014, 1018 (9th Cir.2001). This is especially so in light of the fact that the precise number of paid-out claims for use of the devices to government health programs is likely in the exclusive possession of Masimo.

■ However, Relators' conspiracy claim, their third claim, fails to state a claim, because it does not adequately allege the existence of a conspiracy. More specifically, the FAC fails to assert that Masimo conspired with any separate and independent individual or entity. A conspiracy cannot exist without more than one entity to conspire with, regardless of whether that entity or individual is named as a defendant. Relators argue that they can, and do, plead a valid conspiracy claim because Masimo conspired with its management personnel. But such a theory runs afoul of the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine provides that, as a matter of law, a corporation cannot conspire with its own employees or agents." *Hoefer v. Fluor*

*Daniel, Inc.,* 92 F.Supp.2d 1055, 1057 (C.D.Cal.2000) (citing *Wash. v. Duty Free Shoppers,* 696 F.Supp. 1323, 1325 (N.D.Cal.1988)). Contrary to Relators' assertion, this doctrine applies to conspiracy claims outside of antitrust, where it was originally developed, and has in fact been applied by several federal courts to claims under the FCA. *See, e.g., United States ex rel. Head v. Kane Co.,* 798 F.Supp.2d 186, 201 (D.D.C.2011); *United States ex rel. Huey v. Summit Healthcare Ass'n, Inc.,* No. CV–10–8003–PCT–FJM, 2011 WL 814898, at *6–*7 (D. Ariz. Mar. 3, 2011). As a practical matter, a corporation cannot conspire with its own employees acting within the scope of their employment, as their actions are already deemed the actions of the corporation. Relators' argument that the doctrine ought not to apply outside the antitrust context is unpersuasive. As noted in *Hoefer,* the basis for the doctrine as a policy is not specific to the antitrust field. Instead, "[t]he logic of the doctrine comes directly from the definition of a conspiracy." 92 F.Supp.2d 1055, 1057 (C.D.Cal.2000). Because "a conspiracy requires a meeting of the minds ... 'you must have two persons or entities to have a conspiracy.'" *Id.* (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953)). Consequently, "[a] corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Id.* (quoting *Nelson Radio & Supply Co.,* 200 F.2d at 914.)

## B. Motion to Strike

■■ Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The essential function of a Rule 12(f) motion is to "'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1994) (quoting *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983)). However, motions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits. *RDF Media Ltd. v. Fox Broad. Co.,* 372 F.Supp.2d 556, 566 (C.D.Cal.2005). In fact, "[a] motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1170 (E.D.Cal.2005). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 669 (C.D.Cal.2000).

Masimo contends that Exhibits A and B to the FAC should be struck because they are scandalous and impertinent. Masimo argues that a scandal exists because these exhibits were taken and disclosed by Relators in violation of Non–Disclosure Agreements entered into by each Relator. Masimo also argues that the exhibits are impertinent because they were gratuitously added to the FAC and are wholly unnecessary to the claims. Relators admit that they copied and moved these exhibits from their hard drives after quitting their employment, but did so only for the purpose of providing the exhibits to the government and corroborating their claims of alleged fraud on the part of Masimo.

■ The exhibits are not scandalous. Scandalous allegations are "allegations that cast a cruelly derogatory light on a party or other person." *In re 2The-Mart.com, Inc. Sec. Litig.,* 114 F.Supp.2d 955, 965 (C.D.Cal.2000) (citing *Skadegaard*

*v. Farrell*, 578 F.Supp. 1209, 1221 (D.N.J. 1984)). Neither these exhibits nor the circumstances of their removal from Masimo cast a cruelly derogatory light on Masimo. Relators sought to expose a fraud against the government and limited their taking to documents relevant to the alleged fraud. Thus, this taking and publication was not wrongful, even in light of nondisclosure agreements, given "the strong public policy in favor of protecting whistleblowers who report fraud against the government." *See United States v. Cancer Treatment Ctrs. of Am.*, 350 F.Supp.2d 765, 773 (N.D.Ill.2004) (holding that a relator was exempt from liability for breach of a confidentiality agreement for the disclosure to the government of documents that showed employer had engaged in fraudulent healthcare billing practices). Obviously, the strong public policy would be thwarted if Masimo could silence whistleblowers and compel them to be complicit in potentially fraudulent conduct. Indeed, the Ninth Circuit has stated that public policy merits finding individuals such as Relators to be exempt from liability for violation of their nondisclosure agreement. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061–62 (9th Cir.2011). Such an exemption is necessary given that the FCA requires that a relator turn over all material evidence and information to the government when bringing a *qui tam* action. *See* 31 U.S.C. § 3730(b)(2).

Nor are the exhibits impertinent. " 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 711 (1990)). Relators allege

that Masimo violated the FCA by making repeated and systematic false statements about the accuracy of its devices. Exhibit A is a sampling of Masimo customer feedback forms, the majority of which Relator Ruhe prepared based upon his notes from tradeshows. Exhibit B consists of beta testing results.[1] Both of these exhibits contain information about the accuracy of the devices at issue in the action and customer comments about the devices. Such information is directly relevant to Relators' allegations. For Masimo to argue otherwise is simply not credible.

## III. CONCLUSION

For the foregoing reasons, Masimo's motions to dismiss and strike are DENIED except with respect to Relators' third cause of action for conspiracy.

---

1. Neither exhibit contains any patient-identifying information.